NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0552n.06
Filed: June 27, 2005

No. 03-3458

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ROBERT COMRIE, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: BATCHELDER and GIBBONS, Circuit Judges; and STAFFORD, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Robert Comrie, during the period when he was under indictment for a crime punishable by a term of imprisonment greater than one year and following his conviction for that crime, provided funds to his friend, Robert Simpson, and Comrie's then-girlfriend, Melissa Dyson, to procure firearms for him. Comrie was charged with conspiracy to make false statements in connection with the acquisition of firearms by Simpson and Dyson and conspiracy to knowingly dispose of and transfer possession of firearms from Simpson while Comrie was under indictment for, and later convicted of, a felony crime. Comrie was also charged with two counts of causing a false statement to be made to a firearms

---

[*]The Honorable William Stafford, United States District Judge for the Northern District of Florida, sitting by designation.

dealer with the intention of deceiving the dealer as to the lawfulness of the sale. Comrie was further charged with two counts of knowingly possessing firearms while convicted of a felony crime.

Comrie presents several claims on appeal. First, he argues that the introduction of evidence concerning his prior conviction constituted plain error. Second, Comrie asserts that he was denied effective assistance of counsel at trial. He also claims that there was insufficient evidence presented at trial to sustain his conviction for two counts of causing false statements to be made to a firearms dealer in connection with a firearms purchase. Next, Comrie appeals the denial of his motion to suppress evidence seized by his probation officer during a search of his home. Finally, Comrie challenges the district court's decision to apply enhancements to his sentence. For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

In July 1999, Robert Simpson, Jr. moved from New York City to Lorain, Ohio, where he stayed at the residence of his friend, Robert Comrie. In late November 1999, after completing the required criminal background check, Simpson purchased a .380 caliber pistol, which he later sold to Comrie. From January to April 2000, Simpson bought twenty more firearms from various gun dealers in Ohio. Prior to these purchases, Comrie gave Simpson the cash to buy the firearms. After each sale was completed, Simpson left the firearms with Comrie. During one occasion, Comrie even accompanied Simpson to a gun show, where Comrie again funded the purchase of the firearms that he later acquired.

For all of these firearms purchases, Simpson completed ATF Form 4473, which asked whether Simpson was the actual buyer of the purchased firearm. Simpson answered this question affirmatively with regard to each purchase of firearms procured for Comrie. During the time that Simpson purchased firearms for Comrie, Comrie was under indictment in the Lorain County Court of Common Pleas for a crime punishable under the laws of Ohio by imprisonment for a term exceeding one year,[1] and he was convicted of that crime on March 27, 2000.

On March 31, 2000, Ronald Warchol, Comrie's probation officer, went to Comrie's home to verify and search his residence. Also present during the search were parole officers, two narcotics detectives, and a canine unit. While searching one of the bedrooms of Comrie's home, Warchol discovered a .22 caliber semi-automatic handgun, a Glock model 27 .40 caliber pistol, Glock model 27 pistol box, a blue Beretta Tomcat box, and over 200 rounds of various caliber ammunition. Shortly thereafter, Simpson decided not to purchase any more firearms for Comrie.

Later that year, Comrie turned to Melissa Dyson, a woman with whom he was having a romantic relationship, to acquire firearms for him. In late October 2000, Comrie raised the idea to Dyson of her purchasing firearms. Comrie told Dyson that she would be able to purchase guns because of her "clean background." On October 29, 2000, Dyson and Comrie attended a gun show together in Akron, where Dyson purchased guns with cash provided by Comrie. At the gun show, Dyson bought twelve firearms. In making each of these purchases, Dyson certified that she was the

---

[1]Comrie was under indictment from November 24, 1999, until March 27, 2000, when he was convicted of a felony offense.

actual buyer of the firearms on the ATF 4473 forms that she completed.  After the gun show, Comrie took possession of the purchased firearms.

One week after the Akron gun show, ATF agents visited Dyson at her home to question her about her firearms purchases.   When the agents asked Dyson why she had bought so many guns, she responded that she had purchased them for her grandfather's collection, a response that Comrie had told her to use if she was ever asked about the purchases.  Dyson later told the agents that Comrie had given her the money to purchase the firearms and that he was in possession of them. A few days after her interview with the ATF agents, Dyson told Comrie that she wanted the guns back because she had been questioned by the police.  Comrie  returned the firearms to Dyson, and although she intended to resell the guns to "get[] them out of [her] name," Dyson instead placed them in a rented storage locker.  In January 2001, Dyson sold the firearms to George's Bait and Carryout in Lorain.  Dyson later told the ATF of her sale of the firearms and turned over the receipts from the sale.              In April 2001, Lorain police executed a search warrant to search Simpson's home in connection with the investigation of a local marijuana trafficking operation.  During the search, police uncovered empty gun boxes for which Simpson did not possess the matching firearms. It was later revealed that these gun boxes once held the firearms that Simpson had purchased for Comrie.

In September 2001, Simpson and Dyson were charged with making false statements in connection with their purchase of firearms for Comrie. They both pled guilty and agreed to testify against Comrie.  Comrie was then charged in a six-count indictment.  Count I charged Comrie with violating 18 U.S.C. § 371 by conspiring with Simpson to make false statements in connection with

the acquisition of firearms by Simpson and to knowingly dispose of and transfer possession of firearms from Simpson while Comrie was under indictment for, and later convicted of, a felony crime. Count IV charged Comrie with conspiring with Dyson to make false statements in connection with Dyson's purchase of firearms in violation of 18 U.S.C. § 371. Count II related to Simpson's March 2000 firearms purchases for Comrie and charged Comrie with causing a false statement to be made to a firearms dealer with the intention of deceiving the dealer as to the lawfulness of the sale, in violation of 18 U.S.C. §§ 922(a)(6) and 2. Count V charged Comrie with the same statutory violations as Count II, but related to Dyson's October 2000 purchases at the Akron gun show. In Counts III and VI, Comrie was charged with knowingly possessing firearms while convicted of a felony crime, in violation of 18 U.S.C. § 922(g)(1). Count III charged possession of the guns seized in the March 31, 2000, search by the probation officer, while Count VI charged possession of the firearms purchased by Dyson.

Comrie pled not guilty to the charges presented in his indictment. He also filed a motion to suppress all evidence seized from his home as the result of the warrantless search made by his probation officer – namely, two handguns, firearms boxes, and ammunition. The district court held an evidentiary hearing and denied his motion. Comrie proceeded to trial and was convicted by the jury on all counts. He was sentenced to sixty months as to Counts I and IV, which sentence was to run concurrently with his sentence of 100 months as to the remaining counts. Comrie's federal sentence runs consecutively to his state sentence in Ohio. Comrie filed a timely notice of appeal of the district court's judgment and sentence.

**II.**

5

Comrie first argues that the district court erred in allowing testimony about his prior conviction when, prior to the start of witness testimony at his trial, Comrie and the government stipulated to the fact that Comrie was under indictment for a crime punishable by imprisonment for a term in excess of one year for the period from November 24, 1999, to March 27, 2000. The parties also stipulated to the fact that he was convicted of such a crime on March 27, 2000. During trial, Comrie did not object to the testimony that he now challenges, so this court reviews this issue for plain error. *United States v. Crozier*, 259 F.3d 503, 516 (6th Cir. 2001). For Comrie to establish plain error, the burden is on him to show: "(1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected [his] substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id*. (quoting *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998)).

Comrie's challenge initially focuses on the testimony of his probation officer, Ronald Warchol. Comrie asserts that Warchol "was permitted to clear up the ambiguity of the stipulation and what it was for." An examination of the substance of Warchol's testimony, however, reveals that Comrie has overstated the nature of his probation officer's testimony. Warchol simply testified that he was a probation officer who supervised probationers sentenced in Common Pleas Court in Lorain County and that, in late March 2000, he was assigned to supervise Comrie. Contrary to Comrie's assertion, Warchol never stated the nature of Comrie's prior conviction.

Comrie next directs the court to statements made by the government in its opening statement:

> This is a case about a defendant who cannot legally purchase or possess firearms because he's been charged with and is later convicted of a felony offense. . . . I suppose the story begins in the fall of the year 1999. The defendant Robert Comrie

6

by that time had been indicted in state court for a federal – I'm sorry – for a felony offense.

Comrie also points to references made by the government during its closing statement:

Robert Comrie could not buy guns for himself. There is a stipulation in this case that from at least November 24, 1999[,] until March 27th of 2000 he was indicted for a felony. And the stipulation continues that he was convicted on March 27th of the year 2000 of a felony. So he could not buy guns. . . . In other words, [Simpson] did not have a felony record and he could buy firearms.

Comrie also noted that later in its closing statement, the government mentioned that Warchol undertook a probation search of Comrie's apartment and that the government stated that "there was a stipulation read to you earlier regarding the felon in possession charge."

Comrie argues that, because of these statements, "the jury knew that the conviction was a felony, knew what kind of felony, knew that Appellant was on probation and had the fact of his felony record hammered home to the jury repeatedly." As a result, he claims that the trial statements cited constitute unfair prejudice against him in accordance with the decision of the U. S. Supreme Court in *Old Chief v. United States*, 519 U.S. 172 (1997).

There are numerous problems with Comrie's claim. First, Comrie mischaracterizes the record. No statement in the record reveals the nature of Comrie's felony conviction. At most, statements made during Comrie's trial indicated to the jury that a crime punishable by a term of imprisonment in excess of one year is a felony.[2] Second, *Old Chief* lends no support for Comrie's position. In that case, the defendant, who, like Comrie, was charged with possession of a firearm

---

[2]Comrie cites no authority for the proposition that the government cannot refer to a defendant's prior conviction, which forms the basis of a § 922(g)(1) charge, as a "felony."

by a person with a felony conviction in violation of 18 U.S.C. § 922(g)(1), offered to stipulate that

he had been convicted of a crime punishable by imprisonment exceeding one year. 519 U.S. at 175.

The government refused the stipulation and instead introduced the order of judgment and

commitment for Old Chief's prior conviction, thereby revealing that Old Chief "did knowingly and

unlawfully assault [the victim], said assault resulting in serious bodily injury" and that Old Chief

was sentenced to five years imprisonment for that crime. *Id*. at 177. The Supreme Court held that

it was an abuse of discretion for the district court to admit Old Chief's record of conviction when

a stipulation was available, because pursuant to Federal Rule of Evidence 403, "the risk of unfair

prejudice did substantially outweigh the discounted probative value of the record of conviction."

*Id*. at 191. In this case, the government never sought to introduce a record revealing the nature of

Comrie's prior felony conviction. Rather, both parties agreed to stipulate that Comrie was

previously under indictment for and convicted of a crime punishable by imprisonment in excess of

one year. The government's references to the stipulation during trial related exclusively to evidence

properly before the jury. We are unable to find error in the references to Comrie's conviction

Moreover, we conclude that statements made by the government during trial did not impose

any unfair prejudice on Comrie. This conclusion is bolstered by the fact that the district judge

specifically instructed the jury prior to its deliberations not to consider Comrie's prior conviction

for any improper purpose:

> The government and the defendant have agreed and stipulated that the defendant was
> convicted of a felony, that is, a crime punishable under the laws of the state of Ohio
> by a term of imprisonment exceeding one year, prior to the date of the crime charged
> in the indictment. You may accept the stipulation as evidence that the defendant was
> convicted of a prior felony offense and find that this element of the charge has been

established.  You should consider [the] parties' agreement only for the purpose of deciding whether the defendant was previously convicted of a felony offense, as is charged in [the] indictment.  You are not to consider it for any other purpose.

In sum, Comrie's claim of plain error is without merit.

## III.

Comrie next argues that he was deprived of the effective assistance of counsel because his trial attorney did not object to references made about his prior conviction.  "As a general rule, this [c]ourt will not review claims of ineffective assistance of counsel for the first time on direct appeal." *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000).  An exception exists when the record is adequate to address the defendant's claim.  *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990). Here, the record is adequate to address the claim.  Since no error, much less plain error, occurred in the references to Comrie's prior conviction, Comrie cannot succeed in a claim that his counsel was ineffective in failing to object to the references.

## IV.

Comrie next contends that evidence presented at trial was insufficient to support his conviction in Counts II and V of causing a false statement to be made to a firearms dealer with the intention of deceiving the dealer as to a fact material to the lawfulness of the sale.  He argues that, in two respects, Simpson and Dyson were unaware that they were breaking the law by purchasing firearms used with funds provided by Comrie.  First, Comrie argues that the ATF Form that Simpson and Dyson each completed during their respective firearms purchases was filled with "vague references" and did not indicate that their transactions were illegal.  Comrie further claims that the ATF Form merely asks whether the individual purchasing the firearm is the buyer, and since

9

Simpson and Dyson purchased the weapons, they were in fact the buyers of the firearms. Second, Comrie asserts that the government did not prove that Simpson and Dyson believed that Comrie was legally ineligible to buy firearms.

We first address the government's contention that Comrie has waived his right to challenge on appeal the sufficiency of the evidence supporting his convictions on Counts II and V. The government noted that Comrie made a motion for judgment of acquittal at the close of all evidence on the ground that Simpson and Dyson were not credible and that their testimony during trial should not be believed.[3] The government contends that, unless the court treats Comrie's motion for judgment of acquittal as a general motion, Comrie's arguments presented on appeal as to the insufficiency of evidence must be deemed waived.

This court will not consider a defendant's challenge to the sufficiency of evidence if the defendant does not make a motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, at the end of the prosecution's case-in-chief and at the close of all evidence. *United States v. Chance*, 306 F.3d 356, 368 (6th Cir. 2002) (citing *United States v. Dandy*, 998 F.2d 1344,

---

[3]Comrie's counsel made the motion for judgment of acquittal in this way:

We would make a motion for judgment of acquittal with reference to all of the various counts of this case. I don't need to elaborately argue the position that I take, but I take the position ultimately that the testimony is insufficient because the testimony of Mr. Simpson, obviously, rest[s] wholly and solely on his own credibility. And I think that his credibility has been shown sufficiently to have been discredited. And I take the same position with reference to the testimony of Ms. Dyson. I don't think her testimony alone is sufficient to support findings of guilty in as far as the various charges in which the government has predicated its case on her testimony.

1356 (6th Cir. 1993)). "Failure to make the required motions constitutes a waiver of objections to the sufficiency of the evidence." *Id*. at 369. "Although specificity in a Rule 29 motion is not required, where the defendant makes a Rule 29 motion on specific grounds, all grounds not specified in the motion are waived." *Id*.

In this case, Comrie's trial counsel presented a Rule 29 motion for judgment of acquittal on the specific ground that Simpson and Dyson – the government's principal witnesses – were not credible. Comrie alters the basis of his insufficiency argument on appeal, instead claiming that Simpson and Dyson did not knowingly violate the law. Therefore, we conclude that Comrie has waived his right to argue on appeal that his convictions under Counts II and V should be reversed for insufficient evidence.

Even if we considered Comrie's insufficiency argument, it lacks merit. Comrie was convicted of "knowingly and unlawfully mak[ing] and caus[ing] to be made a false and fictitious statement, intended and likely to deceive [a licensed firearms] dealer with respect to facts material to the lawfulness of the sale and acquisition of . . . firearms" when he "counsel[ed], induce[d] and willfully cause[d]" Simpson and Dyson to represent on ATF Form 4473 that they were the actual buyers of firearms that were being purchased for Comrie. ATF Form 4473 asks the buyers of the firearm, "Are you the actual buyer of the firearm indicated on this form? If you answer "no" to this question the dealer cannot transfer the firearm to you. (*See Important Notice* 1.)." Notice 1, which is included with Form 4473, further reads:

> WARNING – The Federal firearms laws require that the individual filling out this form must be buying the firearm for himself or herself or as a gift. Any individual who is not buying the firearm for himself or herself or as a gift, but who completes

> this form, violates the law. Example: Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith. Mr. Smith gives Mr. Jones the money for the firearm. If Mr. Jones fills out this form, he will violate the law. However, if Mr. Jones buys a firearm with his own money to give to Mr. Smith as a birthday present, Mr. Jones may lawfully complete this form. A licensee who knowingly delivers a firearm to an individual who is not buying the firearm for himself or herself or as a gift violates the law by maintaining a false ATFF 4473.

Form 4473 also states that, by signing the form, firearm transferees are certifying that the answers given on the form – including whether they are the actual buyers of the firearm – are true and correct. Both Simpson and Dyson signed the ATF Form prior to purchase, thereby indicating that they were the actual buyers of the firearms purchased.

The proof at trial cannot support Comrie's claim that Simpson and Dyson were unaware that they were procuring firearms for Comrie in violation of the law. First, ATF Form 4473 is explicit in its explanation that using funds received from a third party to buy firearms for that party is unlawful. Second, Simpson and Dyson each testified under oath during trial that Comrie gave them money to buy firearms for him. Simpson testified that, at the time he transferred the firearms to Comrie, Simpson was aware that Comrie had been indicted for a felony offense in Ohio and that it was unlawful for Comrie to acquire firearms during this period. Dyson likewise testified that Comrie gave her money to buy guns because, unlike him, she had a "clean background."

## V.

Prior to the start of trial, Comrie moved to suppress evidence[4] seized by Ronald Warchol, his probation officer, during Warchol's search of Comrie's residence on March 31, 2000. This

---

[4]The evidence seized included two guns, firearms boxes, and ammunition.

evidence formed the basis for the offense charged in Count III of the indictment. The district court denied the motion, concluding that the probation officer had the authority to conduct the search because there were reasonable grounds to believe that Comrie was not abiding by the law or otherwise complying with the terms of his probation.[5]

On appeal, Comrie argues that his probation officer lacked reasonable grounds to suspect that he was in any way not complying with his probationary terms, and therefore, the probation officer lacked the authority to conduct the search. Specifically, Comrie argues that Warchol lacked reasonable suspicion to search his residence because his parole officer acted on hearsay and "stale" information in deciding that reasonable suspicion for the search existed. In reviewing the denial of a defendant's motion to suppress evidence, this court reviews the factual findings of the district court for clear error and its conclusions of law *de novo*. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000). "The evidence must be reviewed, however, 'in the light most likely to support the district court's decision.'" *Id*. (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)).

---

[5]The conditions of supervision that Comrie signed at the start of his probationary period provided:

> I agree to a search, without warrant, of my person, my motor vehicle, or my place of residence by a supervising officer or other authorized representative of the Department of Rehabilitation and Correction at any time. *Notice: Pursuant to section 2967.131 of the Revised Code, Officers of the Adult Parole Authority may conduct warrantless searches of your person, your place of residence, your personal property, or any property which you have been given permission to use if they have reasonable grounds to believe that you are not abiding by the law or terms and conditions of your supervision.*

In *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987), the United States Supreme Court decided that, in order to comply with the Fourth Amendment, a search of a probationer's home must be reasonable. The Court upheld the search of a probationer's home pursuant to a Wisconsin regulation that allows for such searches if the probationer's supervisor approves and there are reasonable grounds to believe that contraband is located in the probationer's home. *Id*. at 872. The Court more recently considered the prerequisites for the search of a probationer's home in *United States v. Knights*, 534 U.S. 112, 121 (2001), emphasizing that no more than reasonable suspicion is needed to conduct such a search: "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." Reasonable suspicion "requires that the authority acting be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a belief that a condition of probation or parole has been or is being violated." *United States v. Payne*, 181 F.3d 781, 786-87 (6th Cir. 1999) (citation omitted).

Warchol testified that he searched Comrie's residence as a result of a conversation he had with Officers Kolster and Soto of the Lorain Narcotics Bureau that "they had information that [Comrie] is a well-connected drug dealer and firearms dealer." Warchol described the information received in this way: "I was told that he's a very well-connected drug and gun dealer, a lot of time he would leave the state for that information, and [the Narcotics Bureau] always knew and had information that [Comrie] would always have guns and drugs either on his person or at his residence." Warchol also testified that the Lorain Narcotics Bureau had provided reliable and

14

trustworthy information to him in the past on other matters. Based upon the information he received

about Comrie, Warchol testified that he believed Comrie was not complying with the rules of his

probation.

Comrie argued that Officers Kolster and Soto's statements about him were based on

information received in May and June of 1999,[6] which was approximately nine or ten months before

Warchol searched Comrie's residence, so the information provided was "stale." In making this

argument, Comrie relied chiefly on the decision of this court in *Payne*. In *Payne*, this court deemed

that a tip – that a probationer had a large quantity of methamphetamine in the trunk of his car – was

too unreliable to provide the searching officers with reasonable suspicion to search the probationer's

---

[6]The information supplied by the Narcotics Bureau was based on its database file on Comrie, which read:

1-5-98 ARRESTED FOR POSS. OF MARIJUANA & PARAPHERN. (CP)

02-23-99 WAS STOPPED DRIVING A RENTAL CAR BY THE P.A. STATE POLICE. DURING A SEARCH OF THE VEHICLE THEY DISCOVERED $8,000 IN THE TRUNK WRAPPED IN PLASTIC AND DRYER SHEETS. . . . (PS)

5-10-99 TASK FORCE ADVISED THAT A SUBJECT WAS TAKEN OFF IN ERIE COUNTY WITH 7 POUNDS OF MARIJUANA. . . . SUBJECT FURTHER ADVISED THAT HE HAS ACQUIRED [marijuana] DIRECT FROM COMRIE IN THE PAST A FEW TIMES ALSO AND PICKED IT UP AT HIS PIN OAK APARTMENT. PAYS $1050 PER POUND. STATED HE SAW APPROXIMATELY 100 POUNDS THERE ON ONE OCCASION. THE SUBJECT SAYS COMRIE GETS HIS DOPE FROM NEW YORK AND CALIFORNIA. JDR

6/17/99 REC'D INFO COMRIE IS BUYING GUNS IN LORAIN COUNTY AND TAKING THEM TO NEW YORK. HE RETURNS WITH MARIJUANA TO A PIN OAK APARTMENT WHERE HE DISTRIBUTES IT. TN

15

property six weeks after the tip was given.  *Id.* at 789-90.  Among the factors cited by the court as reasons why it was impermissible to rely on the tip were: (1) that the tip became "garbled" as it was reported to the officers that conducted the search, because the tip that the searching officers actually received was that the probationer was dealing a large quantity of drugs from his trailer, not that methamphetamine had been found in the trunk of Payne's car; (2) that the tip "lacked detail and failed to predict any future events that could be monitored to provide corroboration"; (3) that the tip was anonymous; (4) that the tip erroneously referenced Payne's drug dealing activities to have taken place from his car, when in fact he owned a pick-up truck; and (5) that "[d]rugs are not the types of objects that are likely to be kept, and . . . the tip contained no indication of ongoing activity."  *Id.*

In this case, Warchol received information that Comrie was a well-known drug and firearms dealer.  The record does not include, however, any indication that Warchol was aware of the more specific information in the file in the Narcotics Bureau database.  The only evidence as to Warchol's knowledge of the information in the file came from Officer Soto when he was asked during his testimony at the suppression hearing whether the report's information was shared with Warchol's office – the Ohio Adult Parole Authority.  Soto responded:

> It may have been shared the day of, prior to us going out to the meeting, or probably before.  I think Detective Kolster had contact with the Adult Parole Authority.  He was basically the one trying to establish the case and build a case, and he may have had some prior conversations with them.

This testimony from Soto appears to be mere speculation without firsthand knowledge.  Given this state of the record, the government failed to establish that Warchol had knowledge of the contents of the Narcotics Bureau's file on Comrie or had any information other than the very general facts

that Comrie was a drugs and firearms dealer. Therefore, Warchol lacked "specific and articulable facts" to warrant a belief that Comrie was violating the law. Consequently,Warchol lacked reasonable suspicion to search Comrie's residence. *Payne*, 181 F.3d at 786.[7]

Even if Warchol had been aware of the contents of the file, *Payne* casts serious doubt on the sufficiency of the information in it as a basis for reasonable suspicion. The information in the narcotics report on Comrie was several months old by the time the search was executed. The court in *Payne* was concerned that the search in that case occurred six weeks after receipt of the tip because, like the information that was the basis of Comrie's search in this case, the tip contained no indication that the unlawful activity was ongoing. 181 F.3d at 790. Also, like the *Payne* tip, the June 1999 tip in Comrie's case was anonymous. Finally, it should not go unnoted that the activities presented in the narcotics file took place at Comrie's residence at the time – 3530 Pin Oak Drive #C. The March 2000 search of Comrie's residence by his probation officer occurred at 1203 West 44th Street. While both addresses are in Lorain, Ohio, the Narcotics Bureau database contained no information that specifically implicated Comrie's activities while he resided on West 44th Street.

In sum, the government did not present evidence as to precisely what information Warchol relied upon in determining that he had reasonable suspicion to search Comrie's residence. The unspecified information that is mentioned in the proof is insufficient to constitute reasonable suspicion. While we need not decide whether the evidence in the Narcotic Bureau's file would have

---

[7]Information that other law enforcement officers possessed is not relevant to the inquiry as to whether Warchol had reasonable suspicion to search. Warchol was the only officer entitled to search based on reasonable suspicion only.

given rise to reasonable suspicion, if known to Warchol, we note that it had several weaknesses similar to those relied upon by the court in *Payne*. Accordingly, we reverse the denial of the motion to suppress and vacate Comrie's conviction on Count III.

## VI.

Comrie next asserts that the district court's decision to increase his offense level violated his Fifth and Sixth Amendment rights. Comrie filed supplemental briefing on this issue, arguing that his claim regarding sentencing enhancements is affected by the decision of the United States Supreme Court in *United States v. Booker*, 543 U.S. __ , 125 S. Ct. 738 (2005). Under *Booker*, "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by . . . a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct at 756. The district court in this case made determinations at sentencing that were not found by the jury beyond a reasonable doubt. Those determinations included a finding that a two level enhancement was proper, pursuant to U.S.S.G. § 3B1.1(c)(2003), for acting as an organizer, leader, manager, or supervisor of a criminal conspiracy with Simpson and Dyson and the district court's acceptance of Comrie's pre-sentence investigation report that his offense conduct involved 33 firearms and subsequent application of U.S.S.G. § 2K2.1(b)(1)(E) (2001).[8] These enhancements resulted in a sentence that violated the Sixth Amendment. *See Booker*, 125 S. Ct. at 756; *Apprendi v. New Jersey*, 530

---

[8]U.S.S.G. § 2K2.1(b)(1)(E) (2001) provides that for the offense of the unlawful receipt, possession or transportation of firearms, if the offense involved between 25 and 49 firearms, the defendant's offense level should be increased by five levels.

U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *see also Blakely v. Washington*, 124 S. Ct. 2531, 2537 (2004) ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of facts reflected in the jury verdict or admitted by the defendant*.").

*Booker* suggests that when a defendant fails to raise a Sixth Amendment challenge to his sentence in district court, as Comrie failed to do here, we should review the case for "plain error." 125 S. Ct. at 769; *see also* Fed. R. Crim. P. 52(b); *United States v. Calloway*, 116 F.3d 1129, 1136 (6th Cir. 1997); *cf. Booker*, 125 S. Ct. at 769 (indicating that in cases not involving a Sixth Amendment violation, courts should apply the harmless-error test). Under the plain-error analysis set out in *United States v. Olano*, 507 U.S. 725, 732-37 (1993), we find that the district court plainly erred. A plain error occurred; it affected Comrie's substantial rights; and the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 732-36 (internal quotation marks and citation omitted). Therefore, a remand for resentencing is appropriate.

Finally, Comrie objects to the assessment of criminal history points for his October 3, 2002, conviction in Pennsylvania for possession with intent to deliver marijuana and criminal conspiracy with intent to deliver marijuana. Comrie has filed documents indicating that the Pennsylvania sentence was vacated on September 30, 2004, and a new trial has been ordered.

On remand, the district court must take the status of the Pennsylvania conviction into account in calculating Comrie's criminal history points.

**VII.**

For the foregoing reasons, we hold that Comrie's plain error, ineffective assistance of counsel, and insufficient evidence claims are without merit. We also reverse the district court's denial of Comrie's motion to suppress and vacate Comrie's conviction on Count III, vacate Comrie's sentence, and remand for further proceedings consistent with this opinion and for resentencing in light of this opinion and the Supreme Court opinion in *Booker*.