*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2251**

State of Minnesota,
Respondent,

vs.

Dana James McEachern,
Appellant.

**Filed December 22, 2014
Affirm
Ross, Judge**

Crow Wing County District Court
File No. 18-CR-12-3266

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, David Hermerding, Assistant County Attorney, Brainerd, Minnesota (for respondent)

Charles L. Hawkins, Minneapolis, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Halbrooks, Judge; and Ross, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Police stopped Dana McEachern for speeding and noticed an alcoholic-beverage bottle cap on the floor of McEachern's car. Police knew that McEachern was the subject

of a probation restriction prohibiting him from possessing or consuming alcohol or controlled substances and obligating him to submit to searches. Police searched the car and found drugs and alcohol, which led to criminal charges for and conviction of possession of controlled substances, first- and second-degree sale of controlled substances, possession of an open bottle, possession of drug paraphernalia, and traffic offenses. McEachern appeals, arguing that the pre-arrest detention, the searches, and the post-arrest questioning violated his constitutional rights. We affirm because the officer's reasonable, articulable suspicion justified the search in light of McEachern's probation conditions, and McEachern's *Miranda* argument has no factual support.

## FACTS

Officer Josef Garcia stopped Dana McEachern's pick-up truck for speeding on an evening in July 2012. McEachern was alone in the car when Officer Garcia approached. The officer asked for McEachern's license and proof of insurance. McEachern produced his license but not proof of insurance. Officer Garcia conducted a records check. The check informed the officer that McEachern was on probation for a 2011 controlled substance conviction and that he was prohibited from possessing or consuming alcohol or controlled substances. It also informed Officer Garcia that the probation terms required McEachern to submit to searches. And he learned that McEachern had recently been charged with being an ineligible person possessing a firearm.

Officer Garcia decided to cite McEachern for failing to provide proof of insurance and to warn him for speeding. He reapproached McEachern's truck and asked him to step

2

out to discuss the citation process. When McEachern opened his door, Officer Garcia saw a Mike's Hard Lemonade bottle cap on the floor in front of the driver's seat.

Officer Garcia asked McEachern if he was carrying any weapon. McEachern said no. McEachern put his hands in his pockets as he walked toward the squad car. The officer asked McEachern to remove his hands from his pockets because he "figured [McEachern] might be in possession of a weapon," and then he conducted a pat search of McEachern's person. During the pat search, Officer Garcia removed a folding knife from one of McEachern's front pockets and a hard, cylinder-shaped container from the other. Officer Garcia then handcuffed McEachern.

The officer examined the container and found two small pills inside. He could not immediately identify the pills, but he later learned that they were Levitra (an erectile-dysfunction medication). The container did not display any prescription information. An officer with a police dog arrived and conducted a dog-sniff for drugs inside and outside McEachern's pick-up truck. The dog did not indicate the presence of any drugs.

Officer Garcia then searched the truck. He was more perceptive than the "drug-detecting" dog. On the front passenger seat he found a backpack that contained a glass marijuana pipe, a small plastic bag holding a substance resembling hashish, and a packet of synthetic marijuana. Behind the front seat, he found an open bottle of Jagermeister and several bottles of Mike's Hard Lemonade in two coolers. He also found two other bottles of liquor along with hallucinogenic mushrooms, a clear plastic bag of what appeared to be methamphetamine, and medicine bottles containing tablets later identified as Vicodin.

Officer Garcia arrested McEachern and took him to the law enforcement center. He read McEachern his *Miranda* rights, and McEachern spoke with him. McEachern answered questions about where he lived, where he was going, and what route he was taking. But he refused to answer questions about what the officer found inside his truck.

The state charged McEachern with three counts of possession of controlled substances, first- and second-degree sale of controlled substances, possession of an open bottle, possession of drug paraphernalia, and two traffic offenses. McEachern challenged the admissibility of the evidence seized during the vehicle and personal searches as well as the admissibility of statements he made during questioning. The district court denied McEachern's motions to suppress.

McEachern and the state agreed to a court trial on stipulated facts. The district court found McEachern guilty on all counts. McEachern appeals.

## D E C I S I O N

McEachern appeals the district court's order denying his motions to suppress evidence found during the searches and the statements he made to Officer Garcia during questioning. He contends that all evidence seized must be suppressed because of the warrantless nature of the searches and because he was detained for an unlawful period before the arrest. He also argues that any post-*Miranda* statements he made to Officer Garcia should have been suppressed under his Fifth Amendment right to remain silent. The facts are not disputed, so we review the challenged legal determinations de novo. *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997).

# I

McEachern maintains that the officer unconstitutionally searched him and his truck. Both the federal and state constitutions guarantee individuals the right not to be subjected to "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. A warrantless search is unreasonable unless it fits a recognized exception. *State v. Munson*, 594 N.W.2d 128, 135 (Minn. 1999). The searches here were warrantless, so we consider whether an exception applies.

The district court reasoned that the warrantless truck search was a reasonable expansion of an undisputedly valid traffic stop under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), and *State v. Askerooth*, 681 N.W.2d 353, 363 (Minn. 2004). The state explains that the vehicle search was justified because the valid stop led to one-on-one contact between the officer and McEachern, which led to a pat search for the officer's safety, which uncovered the pill container, which justified the truck search. The flaw in the state's rationale is that an officer conducting a pat search for officer safety has no constitutional authority to reach into a driver's pocket to retrieve an item unless the plain feel of the item informs the officer that it is a weapon or contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 375–76, 113 S. Ct. 2130, 2137 (1993). The state gives no persuasive justification supporting the officer's decision to reach into Garcia's pocket to retrieve what the officer perceived to be (and later found to be) a small cylindrical pill container. A pill container cannot reasonably be confused with a dangerous weapon and the officer had no reason to suppose that it contained illegal drugs. We do not decide the case on the state's theory.

5

A different constitutional ground justifies the vehicle search and the collection of evidence. McEachern had agreed to consent to random searches as part of his probation, and this agreement was known to Officer Garcia. McEachern contends that this search condition authorized searches only by probation officers because his agreement was with the probation office, not with police. The contention does not persuade us. Police frequently accompany probation officers and conduct probation searches with probation officers. Officer Garcia testified without contradiction that the search condition did not specify that McEachern must submit to probation searches—only that he must submit to searches. We have no reason to construe the agreement more restrictively than its language states or reasonably implies.

Because a probationer who has agreed to a search condition has "significantly diminished privacy interests," the Fourth Amendment requires only a reasonable suspicion of criminal activity to conduct a search. *United States v. Knights*, 534 U.S. 112, 119–21, 122 S. Ct. 587, 592–93 (2001); *see also State v. Anderson*, 733 N.W.2d 128, 140 (Minn. 2007). We therefore must decide whether Officer Garcia had reasonable suspicion of illegal activity to search McEachern's truck.

We have no difficulty holding that reasonable suspicion of illegal activity justified the vehicle search based on the following circumstances. McEachern was prohibited from possessing alcohol. Officer Garcia saw a bottle cap of an alcoholic beverage in plain view on the driver's side floor as Garcia stepped from the truck, and an officer's asking a driver to step out of a stopped vehicle is not a constitutionally significant event. *Askerooth*, 681 N.W.2d at 367 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98

S. Ct. 330, 333 (1977)). A reasonable officer would suspect that the bottle cap on a car's floor has a matching bottle somewhere inside the car, and the alcoholic contents of the bottle, if found, would indicate that McEachern had violated both the terms of his probation and the open-bottle law. *See* Minn. Stat. § 169A.35, subd. 3 (2012). Officer Garcia was therefore constitutionally permitted to search anywhere in the truck where he might reasonably find the matching bottle. *See State v. Bigelow*, 451 N.W.2d 311, 312–13 (Minn. 1990).

At oral argument, McEachern's attorney argued for different reasoning: "[W]hen I was a kid, I used to put the bottle caps on the heel of my shoe and we used to [tap] dance with them." He alternatively insisted that it was reasonable to assume that McEachern did not open the bottle in the car and drop the cap on the floor, but rather, while he was walking about, he inadvertently stepped on the cap that had been left on the ground by a stranger, and, not knowing the cap had affixed to his shoe, he stepped into the truck where the cap fell to the floor. These explanations are underwhelming. The record does not indicate that McEachern shared his attorney's tap dancing tendencies. And we also think the stuck-to-the-shoe theory is far fetched. But even assuming these theories are reasonable, their reasonableness does not render our theory unreasonable. The issue is whether a reasonable officer would suspect that the bottle cap on the truck floor may lead to a matching bottle elsewhere in the truck. We hold that he would.

We need not consider the constitutionality of the pat-search of McEachern's person because the knife and pill bottle found in his pockets would have inevitably been discovered during a search incident to McEachern's arrest for the various drugs in his

7

truck. *See State v. Lican*, 659 N.W.2d 243, 254 (Minn. 2003) (discussing the proper application of the inevitable discovery exception). Because the items discovered during the pat search were not necessary to Officer Garcia's reasonable suspicion to search the truck for an open liquor bottle, the truck search is valid even if the pat search is not.

## II

McEachern argues that his detention during the stop was unconstitutionally long, but we reject the argument because it lacks factual support. Police may detain a suspect so long as reasonable suspicion for the detention exists and police investigate their reasonable suspicions diligently and reasonably. *State v. Moffatt*, 450 N.W.2d 116, 119 (Minn. 1990). The record does not suggest any unreasonable delay between the time the officer stopped McEachern and the time he developed reasonable suspicion to search his truck. The record also does not suggest that the truck search was lengthy.

## III

McEachern contends that his post-arrest statements to Officer Garcia should be suppressed. Officer Garcia advised McEachern of his *Miranda* rights before questioning him. McEachern identifies no facts that suggest that his waiver of his right to remain silent was not knowing, intelligent, and voluntary. *See State v. Jones*, 566 N.W.2d 317, 322 (Minn. 1997). The officer stopped questioning McEachern when McEachern stopped answering questions. McEachern gives us no reason to reverse the district court's decision to admit his statements into evidence.

**Affirmed.**