J-A01017-15

2015 PA Super 81

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SAMANTHA FLEET, | |
| Appellant | No. 29 WDA 2014 |

Appeal from the Judgment of Sentence entered November 15, 2013,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s): CP-02-CR-0008782-2013

BEFORE:  FORD ELLIOT, P.J.E., DONOHUE, and ALLEN, JJ.

DISSENTING OPINION BY ALLEN, J.:                    **FILED APRIL 16, 2015**

I agree with the Majority that persons subject to involuntary civil commitments are entitled to the constitutional protections provided by the Fourth Amendment and Article I, Section 8, as these protections apply to all citizens, regardless of their status, when police or other government entities are involved.  Majority at 6.  However, where the Majority concludes that the warrant for Appellant's involuntary commitment for an emergency mental health examination was invalid and the evidence should therefore have been suppressed, I would hold that the § 7302 warrant was properly issued, and that the subsequent seizure of Appellant and search incident thereto, were constitutionally valid.

Preliminarily, I would conclude that the warrant for Appellant's emergency commitment under § 7302 of the Mental Health Procedures Act ("MHPA") was validly issued.  As we explained in ***Commonwealth v.***

***Jackson***, 62 A.3d 433, 439 (Pa. Super. 2013) "our Supreme Court [has] held... that the standard for evaluating the validity of [§ 7302 warrants] is whether reasonable grounds exist to believe that a person is severely mentally disabled and in need of immediate treatment." ***See*** 50 P.S. § 7301(a) ("[a] person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself"). In evaluating the validity of a § 7302 warrant, "t]he guiding inquiry is whether, when viewing the surrounding facts and circumstances, a reasonable person in the position of the applicant for a section 7302 warrant could have concluded that an individual was severely mentally disabled and in need of immediate treatment." ***Jackson***, 62 A.3d at 439 (citations and internal quotations omitted).

Here, Officer Newcomer testified that on December 14, 2012, Appellant's mother appeared at the police station and reported that Appellant was suffering from depression and had made statements about "wanting to end things." N.T., 11/15/13, at 5-6; Affidavit of Probable Cause, 12/31/12. Appellant's mother then showed Officer Newcomer text messages from Appellant in which Appellant stated: "I'm going to kill myself." N.T., 11/15/13, at 5, 14; Affidavit of Probable Cause 12/31/12. Although the date and time of the text messages was not specified at the suppression hearing, Officer Newcomer testified that she personally viewed the text messages,

that in them, Appellant unequivocally expressed a desire to kill herself, that Appellant's mother related to her that Appellant suffered from depression and had made previous suicidal statements, and that the officer's understanding was that Appellant was indicating an intent to commit suicide. N.T., 11/15/13, at 5-6, 14. I would conclude, in light of the foregoing, that a person in Officer Newcomer's position could have reasonably believed that Appellant was severely mentally disabled and in need of immediate treatment, and that in the interest of protecting human life, a temporary emergency examination by a physician was warranted.

A section 7302 commitment is an initial emergency examination period under which the individual must be examined by a physician within *two hours* of arrival at the hospital in order to determine if the person is actually severely mentally disabled and in need of immediate treatment. 50 P.S. 7302(b). If a physician then determines that the person is in fact severely mentally disabled and in need of emergency treatment, treatment shall begin immediately, and cannot exceed 120 hours. § 7302(b) and (d). If the physician does not so find, or if at any time it appears there is no longer a need for immediate treatment, the person shall be discharged and returned to such place as he may reasonably direct. *Id*.

Thus, within *two hours* of arrival at the hospital, the statute requires a *physician* to determine whether the individual is severely mentally disabled and in need of treatment; that determination is not made at the time of issuance of the warrant. Rather, at the time of issuance of the warrant, the

- 3 -

applicant need only demonstrate "reasonable grounds" to believe that the person is severely mentally disabled and in need of immediate treatment. *See In Re J.M.*, 726 A.2d 1041, 1074 (Pa. 1999) (explaining that a § 7302 warrant is "a warrant to take [the individual] to the doctor, not to take [the individual] to jail", and only allows the individual to be taken into custody and kept in custody for a maximum of two hours for the purpose of performing an emergency mental health examination for therapeutic purposes). I would conclude that such reasonable grounds existed here.

Moreover, in the event a physician does ultimately determine that the individual is severely mentally disabled, even then, the individual cannot be committed in excess of 120 hours without the Commonwealth satisfying the rigorous involuntary commitment requirements set forth in § 7303 of the MHPA, which require a hearing where the Commonwealth must justify the need for involuntary commitment by clear and convicting evidence. *See In re Ryan*, 784 A.2d 803, 806 (Pa. Super. 2001) ("Under section 7303, when a facility deems a patient to be in need of additional care beyond the 120 hours of emergency care authorized by section 7302, an application to extend treatment may be filed in the trial court and an informal hearing held within 24 hours of the filing of the application [and] after the hearing, if the judge or mental health review officer certifies the patient as severely mentally disabled, he may authorize up to an additional twenty days of treatment."); *J.M*, 726 A.2d 1041, 1047, n.9 ("Pennsylvania jurisprudence has consistently noted that the legislature intended the MHPA to create a

treatment scheme under which a patient's procedural protections expand progressively as the deprivation of liberty gradually increases."). In light of the foregoing, I would conclude that Officer Newcomer acted reasonably in her belief that Appellant was in need of emergency medical examination, and that the § 7302 warrant was validly issued.

In *Jackson*, on which the Majority relies, the appellant alleged that evidence obtained during the execution of a § 7302 warrant should have been suppressed because the application was legally insufficient. *Jackson*, 62 A.3d at 458. Specifically, the appellant in *Jackson* asserted that the application contained no allegations that he was a threat to himself, or that he inflicted serious bodily injury. *Id.* at 439. We determined in *Jackson* that the application satisfied the requirements for the issuance of a valid § 7302 warrant, and that the contraband obtained during execution of that warrant was admissible. I would conclude that the evidence in this case was far more compelling than that in *Jackson*, where the appellant threatened to hurt the applicant, and hit her car with a baton. Here, Officer Newcomer viewed text messages from Appellant in which she articulated the clear and immediate intent to kill herself. Under these circumstances, and as in *Jackson*, I would conclude that Officer Newcomer had reasonable grounds to believe that Appellant was severely mentally disabled and in need of immediate treatment, to satisfy the requirements for issuance of a valid § 7302 warrant.

Moreover, even if the warrant was technically defective pursuant to the procedural prerequisites of the MHPA, I do not believe that such defects would necessarily entitle Appellant to suppression of the evidence. Suppression is a remedy for violation of the Fourth Amendment guaranty.[1] *See e.g. Commonwealth v. Mason*, 490 A.2d 421, 425 (Pa. 1985) (explaining that "technical violations of the Rules regarding the issuance and execution of a search warrant do not ordinarily render the search unreasonable nor require the exclusion of evidence, whereas violations of the Rules which assume constitutional dimensions and/or substantially prejudice the accused may require the exclusion of evidence so seized"). Neither *Jackson* nor the MHPA require suppression as an automatic remedy where a warrant application fails to comply with the statutory requirements.

_____

[1] *See Davis v. United States*, 131 S. Ct. 2419, 2426-27, 180 L. Ed. 2d 285 (2011)(citations and internal quotations omitted):

> The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Amendment says nothing about suppressing evidence obtained in violation of this command. That rule—the exclusionary rule—is a prudential doctrine, created by this Court to compel respect for the constitutional guaranty. Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search. The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations. Our cases have thus limited the rule's operation to situations in which this purpose is thought most efficaciously served. Where suppression fails to yield appreciable deterrence, exclusion is clearly ... unwarranted.

In addressing Appellant's claim that the police "violated her rights under the Fourth Amendment of the United States Constitution and Article 1 § 8 of the Pennsylvania constitution," we are required to examine whether Appellant's constitutional rights were infringed upon when she was seized and subsequently searched by Officer Newcomer. Appellant's Brief at 13-17. Because I believe the evidence (heroin and a syringe) was not obtained in the course of an illegal search or seizure, I would conclude that Appellant is not entitled to suppression.

The Fourth Amendment to the United States Constitution, which protects from unreasonable searches and seizures, "applies to seizures in civil, as well as criminal, proceedings", and courts have generally recognized that the Fourth Amendment protections extend to civil involuntary commitment proceedings. *Doby v. DeCrescenzo*, 171 F.3d 858, 871 (3d Cir. 1999) *citing O'Connor v. Ortega*, 480 U.S. 709, 714–15, 107 S.Ct. 1492, 1496, 94 L.Ed.2d 714 (1987). Under the Fourth Amendment, "the established remedy for illegal seizures and searches in criminal cases is exclusion of the fruits of the illegal police conduct." *Commonwealth v. Johnson* 86 A.3d 182, 187 (Pa. 2014).

Because the Fourth Amendment does not proscribe all searches and seizures, but only 'unreasonable' ones, "the central question in any litigation challenging a particular search or seizure is whether that search or seizure was constitutionally 'reasonable.'" *Commonwealth v. Beaman*, 880 A.2d 578, 582-583 (Pa. 2005) *citing Michigan Dep't of State Police v. Sitz*,

496 U.S. 444, 450, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990). "[T]he reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy, and on the other, the degree to which it is needed for the promotion of legitimate governmental interests." **United States. v. Knights**, 534 U.S. 112, 112-13, 122 S. Ct. 587, 588, 151 L. Ed. 2d 497 (2001) (citations omitted). Here, balancing the deprivation of liberty caused by the involuntary commitment against the government's legitimate interest in providing for the emergency examination of dangerous and mentally ill individuals, I would conclude that the seizure of Appellant, who expressed an intent to kill herself, was reasonable. **See Doby v. DeCrescenzo**, 171 F.3d 858, 871 (3d Cir. 1999), (finding § 7302 seizures "reasonable" under the Fourth Amendment, after balancing the deprivation of liberty caused by the involuntary commitment against the government's legitimate interest in providing for the involuntary examination of dangerous individuals). Accordingly, I would hold that Appellant was not subjected to a violation of her Fourth Amendment rights.

While "[t]he touchstone of the Fourth Amendment is reasonableness, not individualized suspicion," the United States Supreme Court has nevertheless generally preferred some quantum of individualized suspicion (probable cause or reasonable suspicion) as a prerequisite to a constitutional search or seizure. **Commonwealth v. Wilson**, 67 A.3d 736, 748 (Pa. 2013) **quoting Samson v. California**, 547 U.S. 843, 855, n.4., 126 S.Ct.

2193, 165 L.Ed.2d 250 (2006); *Maryland v. King*, 133 S. Ct. 1958, 1969, 186 L. Ed. 2d 1 (2013). In this case, I would conclude that probable cause existed for the seizure.

In criminal cases, the probable cause standard is described as follows:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require *only a probability,* and not a prima facie showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (emphasis in original; citations and quotation marks omitted). Applying this probable cause analysis in the context of involuntary commitments under the MHPA, the inquiry is not whether an individual has committed or is committing a crime; rather, § 7302 permits a peace officer to take an individual to an involuntary treatment facility if there are "reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment." 50 P.S. § 7302(a); *In re J.M.*, 726 A.2d at 1046; *In re F.C. III*, 2 A.3d 1201, 1207, n.4. (Pa. 2010) ("As defined in Section 7301(a), the term

'severely mentally disabled' essentially means the person, as a result of mental illness, poses a clear and present danger to himself or others").[2]

In assessing whether probable cause has been established, "[t]he question we ask is not whether the officer's belief was correct or more likely true than false[;] [r]ather, we require only a probability, and not a prima facie showing." **Thompson, supra**. "Probable cause ... is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people ... act." **Kaley v. United States**, 134 S. Ct. 1090, 1103, 188 L. Ed. 2d 46 (2014) (citations omitted); **see also Florida v. Harris**, 133 S. Ct. 1050, 1056, 185 L. Ed. 2d 61 (2013) (explaining that probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules") (citations and internal quotations omitted).

Here, where Officer Newcomer testified that Appellant's mother appeared at the police station, showed her text messages from Appellant in which Appellant stated: "I'm going to kill myself", and reported that Appellant was suffering from depression and had made statements about "wanting to end things", I would conclude that probable cause existed for

_____

[2] While our Supreme Court in **J.M.** held that "the 'reasonable grounds' standard set forth in section 7302 was not meant to approximate the standards employed in the criminal warrant context" and that the reasonable grounds standard is less exacting than the probable cause standard, the Court in **J.M**. was not conducting a Fourth Amendment analysis to determine whether an unconstitutional search and seizure had occurred. **J.M.**, 726 A.2d at 1047-1048.

- 10 -

the belief that Appellant was severely mentally disabled. N.T., 11/15/13, at 5-6, 14; Affidavit of Probable Cause 12/31/12. Therefore, in my view, Appellant was not subjected to an illegal seizure in violation of the Fourth Amendment which would warrant suppression.

Moreover, I would uphold Officer Newcomer's search of Appellant (in which heroin and a syringe were recovered) as a valid search incident to a civil commitment, for safety purposes, analogous to a search incident to arrest. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (a police officer may conduct a warrantless search incident to arrest limited to the area within the arrestee's immediate control, where it is justified by the interests in officer safety or to prevent evidence destruction). I would conclude that when effecting an involuntary commitment, police officers are permitted to conduct an accompanying search of the person detained and the immediate area which the person occupies, for safety purposes, akin to a search incident to arrest. *See also Commonwealth v. Shiflet*, 670 A.2d 128, 132 (Pa. 1995) (recognizing the search incident to arrest exception as a "reasonable intrusion for the protection of police officers [who may conduct] a search of the person arrested and the immediate area which the person occupies during his or her custody"); *Commonwealth v. Henkel*, 452 A.2d 759, 764 (Pa. Super. 1982) (in a search incident to arrest, arresting officers may search the person and area within reach of the suspect, in the interest of preserving the safety of those making the arrest). Accordingly, I would conclude that Officer Newcomer's

recovery of heroin and a syringe from Appellant occurred during a lawful search incident to Appellant's commitment, for the safety and well-being of Appellant, Officer Newcomer, and others.[3]

For the foregoing reasons, I respectfully dissent.

_____

[3] There is a question as to whether a different result could be reached under Article I, Section 8 of the Pennsylvania Constitution which affords greater individual privacy protections than the Fourth Amendment. ***See Commonwealth v. Edmunds***, 586 A.2d 887 (Pa. 1991). However, in ***Commonwealth v. Perez***, 97 A.3d 747 (Pa. Super. 2014), we explained:

> It is axiomatic that when presenting a claim for higher protections under the Pennsylvania Constitution, the Appellant must discuss the following four factors: 1) text of the Pennsylvania constitutional provision; 2) history of the provision, including Pennsylvania case-law; 3) related case-law from other states; 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence. ***Commonwealth v. Edmunds***, 526 Pa. 374, 586 A.2d 887, 895 (1991).

Appellant's brief does not include the required ***Edmunds*** analysis for us to consider whether she is entitled to greater protections under the Pennsylvania constitution, and Appellant does not argue that the Pennsylvania Constitution offers greater protection than the United States Constitution. Therefore, I do not engage in a separate state constitutional analysis.