

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-16-2007

# USA v. Eggleston

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1416

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Eggleston" (2007). *2007 Decisions*. Paper 767.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/767

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
——————

No. 06-1416
——————


UNITED STATES OF AMERICA


v.

EUGENE EGGLESTON,

Appellant
——————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 04-CR-00601)
District Court Judge: The Honorable Stewart Dalzell
——————

Submitted Under Third Circuit L.A.R. 34.1(a)
April 27, 2007

BEFORE:  SCIRICA, <u>Chief Judge</u>, FUENTES and ALARCÓN,[*] <u>Circuit Judges</u>.

(Filed July 16, 2007)

————————————————

[*] The Honorable Arthur L. Alarcón, Senior Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

_____

OPINION OF THE COURT
_____

FUENTES, <u>Circuit Judge</u>.

In September 2004, police arrested parolee Eugene Eggleston after parole agents searched his residence and discovered drugs, stacks of cash, and firearms. Following his indictment by a federal grand jury for various crimes, Eggleston moved to suppress evidence seized as a result of the search. The District Court denied the motion, as well as a motion to reconsider, ruling that the agents did not violate Eggleston's Fourth Amendment rights because the search was based on reasonable suspicion. Eggleston appealed and, for the reasons that follow, we will affirm.

**I.**

In November 2003, after serving time for distribution of a controlled substance, Eugene Eggleston was released from state prison under the supervision of the Pennsylvania Board of Probation and Parole. Just prior to his release, he executed the Board's PBPP-11 form, titled "Conditions Governing Parole/Reparole," in which he provided an approved residence and had to "expressly consent to the search of [his] person, property and residence without a warrant by agents of the Pennsylvania Board of Probation and Parole." Supp. App. 3. He also agreed that he would submit to regular drug testing and not possess any ammunition or drug paraphernalia.

In March 2004, while under the supervision of parole agent Frontis Cue, Eggleston

submitted a urine sample that tested positive for a low level of cocaine and was subsequently ordered to undergo drug treatment. On August 19, 2004, then under the supervision of parole agent Denise Robinson, Eggleston again tested positive for a low level of cocaine. He submitted another urine sample on September 2 that tested negative. When Robinson learned of the August 19 positive test result on September 8 after returning from vacation, she went to Eggleston's residence, informed him of the result, and directed him to report to the parole office the following day.

Eggleston arrived at the parole office on the morning September 9, but was not in the waiting room when Robinson came to see him. After Eggleston returned a short time later, an agent had him submit a urine sample, which eventually tested negative. When he emerged from the restroom, agents handcuffed him and placed him in a holding cell.

Agents Robinson and Cue then met with their supervisor, James Poulos, and recommended that agents search Eggleston's residence. Poulos agreed and authorized the search based on the following facts and circumstances. First, Eggleston, previously convicted of two drug trafficking crimes, had twice tested positive in recent months for low levels of cocaine. According to the agents, the low levels of cocaine suggested that Eggleston was handling cocaine rather than using it. Second, just a few days earlier, Cue had seen Eggleston, who was not gainfully employed, on a new motorcycle. Third, while supervising Eggleston from November 2003 to April 2004, Cue had heard from other parolees that Eggleston was selling drugs. Finally, when Robinson had asked Eggleston for the keys to his residence, he responded that he had lost them; Robinson believed that

Eggleston might be concealing something at his residence.

Later that day, four parole agents, including Robinson, conducted a search of Eggleston's residence and discovered large quantities of cocaine, stacks of cash, and three guns. The agents contacted the police who obtained a search warrant, came to the residence, and recovered the following: (1) more than five kilograms of cocaine; (2) more than $61,000 in cash; (3) drug paraphernalia; and (4) three loaded firearms—an AK-47 rifle, a semi-automatic assault weapon (a "small Uzi"), and a nine millimeter semi-automatic handgun.

Eggleston was then placed under arrest. He signed a written waiver of his rights and admitted that the drugs and guns seized belonged to him. Eggleston was indicted by a federal grand jury and charged with possession with intent to distribute more than five kilograms of cocaine, possession of a firearm in furtherance of drug trafficking, and possession of a firearm by a convicted felon. Eggleston filed a motion to suppress the evidence seized at his residence and his subsequent written statement, arguing that the search violated his Fourth Amendment rights. The District Court denied the motion after an evidentiary hearing in January 2005. The Court ruled that, based on the totality of the circumstances, the search was supported by reasonable suspicion.

The District Court held a second suppression hearing in September 2005 after Eggleston hired new counsel and submitted a motion for reconsideration. Eggleston urged the Court to reconsider its previous findings and also asserted for the first time that the search of his residence was improper because a different residence was listed on the

4

consent form he signed. The District Court rejected Eggleston's arguments and denied the motion.

In October 2005, Eggleston pleaded guilty to the crimes charged in the indictment, but reserved the right to appeal the denial of his motion to suppress. In January 2006, the District Court sentenced Eggleston to thirty years in prison, and Eggleston filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291. We will review the District Court's underlying factual determinations for clear error, and will exercise plenary review over the application of law to those facts. United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005).

## II.

Eggleston argues that the search of his residence violated his Fourth Amendment rights. We examine the totality of the circumstances to determine whether a search was reasonable under the Fourth Amendment. Samson v. California, 126 S. Ct. 2193, 2197 (2006). The Supreme Court has explained that the Fourth Amendment does not require a parole agent or officer to have a warrant or probable cause before searching a parolee or his residence. Instead, an agent need have only a "reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity." United States v. Knights, 534 U.S. 112, 121 (2001).

Eggleston argues that he did not consent to the search of the residence and that, as a result, the warrantless search was unreasonable under the Fourth Amendment. As an initial matter, we disagree with Eggleston that a warrant or probable cause is necessary

when a parolee has not consented to a search.  In <u>Knights</u>, the Supreme Court described a probation search condition as "a salient circumstance" in evaluating the reasonableness of a search, suggesting it is one of many factors that courts should consider.  <u>Knights</u>, 534 U.S. at 118.  Further, in <u>United States v. Hill</u>, 967 F.2d 902 (3d Cir. 1992), we upheld a search after reviewing it for reasonableness even though there was "no evidence that [the parolee] expressly agreed to warrantless searches, or that warrantless searches were an express condition of [his] parole."  <u>Id.</u> at 908 n.9 (citations omitted).

In any event, we agree with the District Court that Eggleston consented to the search.  Although the PBPP-11 form contained a different address than the home that was searched, the search condition language on the form is not limited to the specific residence listed there.  Further, Agent Robinson approved his move to the new residence after receiving a notarized letter from the owner of the home, Eggleston's mother-in-law, who explained that she was allowing Eggleston and her daughter to stay there rent-free.  Perhaps Agent Robinson should have provided her approval of the change in residence in writing and should have acquired a search consent form from Eggleston's mother-in-law, but we do not believe that by changing residences Eggleston had any greater expectation of privacy than on the day he signed the PBPP-11 form.

Eggleston also argues that the parole agents did not base their decision to search his residence on reasonable considerations.  He contends that the March and August 2004 positive drug tests constituted "stale information" by the time the agents made their decision to search his residence, and he notes that the urine sample he submitted on

6

September 2 was negative. However, the fact that the late August test and early September test provided different results does not seem inconsistent with the view of the agents that he was handling drugs rather than using them. We also note that the August test information was not "stale" in terms of Eggleston's parole agent waiting to act on the information; Agent Robinson testified that she first learned of the results after returning from vacation on September 8 and that she visited Eggleston that day.

In addition, Eggleston cites to a memorandum written by Robinson suggesting that Robinson asked for his keys only after the decision to search his residence had been made. Robinson and Poulos, however, testified before the District Court that the missing keys were one of the reasons they decided to search the residence. The District Court credited this testimony and we do not believe it erred in doing so. Further, since it is undisputed that Eggleston was handcuffed and searched before the agents met, it makes sense that Robinson knew the keys were missing when the agents reached their decision.

We have carefully considered Eggleston's other contentions and find that they are without merit. Based on the totality of the circumstances, the agents' decision to search Eggleston's residence was justified. The agents knew that Eggleston had previously been convicted of drug crimes and that he had tested positive for low levels of cocaine. They then pieced together other information—the motorcycle, the tips from other parolees, the missing keys, and the lack of full-time employment—and suspected that Eggleston might be dealing drugs. Their decision to search his residence as a result of their suspicions was reasonable and did not violate Eggleston's Fourth Amendment rights.

7

## III.

For the reasons stated above, we agree with the District Court that, consistent with the requirements of the Fourth Amendment, the decision to search Eggleston's residence was a reasonable one. Accordingly, we will affirm.