J-S21037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GREGORY GEORGE SIMMERS, JR., | |
| Appellant | No. 1967 EDA 2015 |

Appeal from the Judgment of Sentence June 18, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0001327-2014

BEFORE: BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:               **FILED APRIL 08, 2016**

Appellant Gregory George Simmers, Jr. ("Appellant") appeals from the judgment of sentence entered by the Court of Common Pleas of Chester County after a non-jury trial resulted in guilty verdicts on charges he possessed methamphetamine, a small amount of marijuana, and drug paraphernalia.[1]   Appellant contends that the drug and paraphernalia evidence was the tainted product of an unauthorized parole agent's search of a residence different from the "approved residence" listed on Appellant's written parole agreement.  We affirm.

The trial court aptly summarizes the pertinent factual and procedural history as follows:

---

[1] 35 Pa.C.S.A. §§ 780-113(a)(16), (31), and (32), respectively.

*Former Justice specially assigned to the Superior Court.

On March 13, 2014, [Appellant] was charged with [the above-listed offenses]. On September 16, 2014, [Appellant] filed a Motion to Suppress the evidence found in [Appellant]'s residence alleging an illegal search. An evidentiary hearing on [Appellant]'s Motion to Suppress was held on October 21, 2014. The Motion was denied by Order dated November 5, 2014.

A stipulated fact trial[1] took place on January 30, 2015. [Appellant] was found guilty on all Counts. [Appellant] was sentenced on June 18, 2015 to 11½ months to 23 months of confinement on Count 1, Possession, and 1 year probation on Count 3, Paraphernalia, to run consecutive to Count 1. [Appellant] requested that [trial court] allow him to continue on bail during the pendency of this Appeal pursuant to Pa.R.Crim.P. 521(B). [The trial court] granted [Appellant]'s request.

On June 26, 2015, [Appellant] filed a Notice of Appeal and an Amended Notice of Appeal. On July 7, 2015, [the trial court] filed a Rule 1925(b)(1) Order and on July 27, 2015, [Appellant] filed a timely Concise Statement of Matters Complained of on Appeal.

\*\*\*

[As pertains to Appellant's issue challenging the order denying his motion to suppress,] [t]he [suppression court] made specific findings of fact at the conclusion of [Appellant's] Motion to Suppress hearing. The findings . . . are set forth below:

1. At all times pertinent to the Motion for Suppression, [Appellant] was under the supervision of the Pennsylvania Board of Probation and Parole and subject to the conditions governing parole set by the Board. (37 Pa. Code § 63.4(1); N.T. 09/17/14, p. 9-10)).

2. [Appellant] was notified of, and agreed to comply with, the special conditions set forth in his Parole Agreement[2] which included the following provisions:

_____

[2] Appellant signed a standard "Pennsylvania Board of Probation and Parole, PBPP-11 (Rev 7/91)" form, which set forth the "Conditions Governing
*(Footnote Continued Next Page)*

a. [Appellant] agrees to "abstain from the unlawful possession or sale of narcotics and dangerous drugs and abstain from the use of controlled substances." (N.T. [at 11]; Exhibit C-1, p.1, par. 5(a));

b. [Appellant] agrees to "comply with the special conditions listed on page 2 imposed by the Board and with special conditions imposed by the parole supervising staff. . . . [Appellant] shall not consume or possess alcohol under any condition for any reason. . . . [Appellant] shall not directly or indirectly have contact or associate with persons who sell or use drugs, outside a treatment setting." (Exhibit C-1, pp. 1-2, par. 7) (emphasis omitted)); and

c. [Appellant] "expressly consents to the search of [his] person, property and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole." (N.T. at 10-11; Exhibit C-1, p.1, par. 7).

3. Agent Gilson processed [Appellant]'s parole and approved [Appellant]'s initial residence where [Appellant] lived with his father at 1915 Valley Road, Coatesville, PA. [Appellant] had difficulties with his father and made a request for approval of his girlfriend's residence at 805 Madison Avenue, Coatesville, PA. (N.T., 9/17/14, pp. 7, 11-12). [Appellant] also had difficulties with his girlfriend and made a request for approval to move to a third residence, 25 Chestnut Street, Pomeroy, PA.

4. On or about December 18, 2013, Agent Gilson's staff forwarded [Appellant] a letter notifying him that permission was granted for [Appellant] to reside at 25 Chestnut Street, Pomeroy, PA.

_(Footnote Continued)_ ——————————

Parole/Reparole). For ease of discussion, we refer to this form as the "parole agreement."

- 3 -

5. As part of his duties to make field contact with [Appellant], Agent Gilson went to 25 Chestnut Street to confirm [Appellant] had moved to that address. Agent Gilson did not find [Appellant] at the 25 Chestnut Street address and began to cruise the area. He recognized a white BMW belonging to [Appellant]'s girlfriend parked at 53 Chestnut Street, Pomeroy, PA. He knocked on the door of that residence and [Appellant] answered the door. [Appellant] confirmed that 53 Chestnut Street was his new residence. (N.T. at 28.).[3]

6. [The suppression court] found [Appellant]'s residence to be 53 Chestnut Street, Pomeroy, PA.

7. [The suppression court] found Agent Gilson to be credible in his testimony that during the February 19, 2014 visit, he smelled a strong odor of marijuana, but did not investigate the odor at that time because he was unaccompanied and he was concerned for his safety due to an unknown male's presence at the residence. (N.T. at 17).

8. On February 26, 2014, Agent Gilson and two additional parole agents returned to [Appellant]'s residence at 53 Chestnut Street to investigate the odor of marijuana that was present on February 19, 2014. [Appellant] was again present at 53 Chestnut Street and answered the door. (N.T. at 17-18). [The suppression court] found Agent Gilson credible in his testimony that upon entering the residence he observed beer containers in the living room and an odor of marijuana emanating from a locked drawer in a T.V. stand. (N.T. at 18-19).

9. Agent Gilson telephoned the Sadsbury Township Police Department to report his suspicion that drugs were

---

[3] Notes of Testimony from the suppression hearing reveal that Agent Gilson visited Appellant three times at the 53 Chestnut Street address prior to the February 26, 2014 search and seizure in question. On each visit, including the visit on the 26th, Appellant represented to Agent Gilson that he was living at the residence. N.T. at 15, 16.

present at 53 Chestnut Street. Sergeant Richard Imhoff responded to the call. (N.T. at 19).

10. [The suppression court] found Sgt. Imhoff credible in his testimony that when he arrived at 53 Chestnut Street he saw [Appellant] seated in a chair. Sgt. Imhoff walked through each room to "clear" the residence. [The suppression court] found this action reasonable as an unknown male was present when Agent Gilson made prior contact at 53 Chestnut Street. [The suppression court] also found Sgt. Imhoff credible in his testimony that during the clearing of the rooms, he observed drug paraphernalia and illegal substances he suspected to be marijuana and crystal methamphetamine in plain view. (N.T. at 30, 32-34).

11. The residence was cleared of all occupants and Sgt. Imhoff posted additional officers at the residence overnight until a search warrant could be obtained. A search warrant was issued . . . on February 27, 2014 based upon an Affidavit setting forth Agent Gilson's and Sgt. Imhoff's plain view observations. (N.T. at 34).

Trial Court Opinion, filed August 24, 2015, at 1, 3-4.

In his sole issue on appeal, Appellant contends that the suppression court committed an error of law in failing to suppress evidence obtained from the February 26, 2014, entry and subsequent execution of a search warrant at the 53 Chestnut Street address where he resided.

Our standard of review is as follows:

[W]e are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous.

***Commonwealth v. McAliley***, 919 A.2d 272, 275–276 (Pa.Super. 2007) (citation omitted).

Initially, Appellant argues Agent Gilson lacked authority to enter 53 Chestnut Street on February 26th when Appellant had given neither verbal permission at the scene[4] nor written permission by virtue of his signing a parole agreement in which a different address was listed. Among the parole conditions Appellant accepted in signing the agreement was that he had to "expressly consent to the search of [his] person, property *and residence*, without a warrant by agents of the Pennsylvania Board of Probation and Parole." Exhibit C-1 (Written Parole Agreement of Gregory George Simmers, Jr., at 1.) (emphasis added). Appellant construes the term "residence" in this condition as limited to the "approved residence" of 25 Chestnut Street listed elsewhere on the parole agreement. As Agent Gilson never amended the written agreement to list 53 Chestnut Street as the approved residence, Appellant cannot be deemed to have ever consented to a search of this address, he maintains.[5]

---

[4] A factual dispute arose over whether Appellant invited the agents inside his residence on February 26th. Agent Gilson testified that Appellant invited them into the residence, N.T. at 25, whereas Appellant testified he did not. N.T. at 39-40. The suppression court made no finding of fact on this point, but resolution of the issue before it did not require it to do so, as it determined that Appellant had expressly given consent to all such visits conducted in furtherance of the agents' supervisory role. For reasons appearing *infra*, we concur with this legal conclusion.

*(Footnote Continued Next Page)*

Appellant's reading is at odds with our settled jurisprudence. In *Commonwealth v. Crisp*, 657 A.2d 5 (Pa.Super. 1995), we rejected a virtually identical argument as discordant with both the plain wording of the standard written parole agreement and the purposes the parole system is clearly intended to achieve. In *Crisp*, police executing a search warrant at an address where the appellant, a parolee, was visiting summoned an on-call parole agent when the appellant became uncooperative. Before departing for the scene, the agent checked the parolee's file and verified that the parolee had recently informed his agent about a change in residence. The new residence, however, was not incorporated in the parole agreement. At the scene, the parolee insisted he resided not at the address subjected to the search warrant but at the address the agent had just verified. He gave the agent a key to that address, and the agent used it to enter and inspect the residence to confirm his occupancy there. During the inspection, the agent discovered contraband that formed the basis of criminal charges.

The parolee filed a motion to suppress evidence of the contraband on grounds that the only residence approved by the parole supervision staff was

*(Footnote Continued)* _____

[5] In advancing his claim that parole agents were authorized to enter only the residential address listed on the written parole agreement, Appellant characterizes Agent Gilson's visit as a Fourth Amendment search. As we explain, *infra*, we conclude the visit and inspection came within the purview of Agent Gilson's supervisory duties and did not, therefore, constitute a Fourth Amendment search.

listed on the agreement signed by the parolee, and he, thus, maintained they had no authority to enter and inspect his new residence. We rejected parolee's argument as follows:

> the signed agreement provides the parole supervision staff with authority to search appellant's "residence." The restriction in paragraph 2 which requires a change of residence to be approved in writing is not meant to be a restriction on appellant's parole officers. Rather, it is a restriction of appellant to permit his parole agent to effectively monitor his compliance with parole conditions. Appellant's suggested reading of the two clauses would create an absurd result which would permit parolees to give false information regarding their residence or to quickly change residences without written approval, thus evading supervision at will.

*Id.* at 7. ***Accord United States v. Eggleston***, 243 F. App'x 715, 717-18 (3d Cir. 2007) (upholding warrantless search of new residence although parolee's signed PBPP-11 form specified different approved residence; search condition language on form not limited to approved residence listed).[6]

The suppression court credited Agent Gilson's testimony that Appellant had confirmed with him on four separate occasions that 53 Chestnut Street was his new residence, N.T. at 15-16, 27. Under our precedent, there was no impropriety in in the agents' entry—invited or uninvited—and plain view inspection of Appellant's residence in furtherance of their supervisory role over his parole.

---

[6] Though not binding upon us, the ***Eggleston*** decision supports the proposition we adopted in ***Crisp***.

In a related argument, Appellant also contends Agent Gilson's February 26, 2014, visit was an invalid search based on "stale information" obtained from a week earlier. Specifically, Appellant contends that the marijuana aroma detected by Agent Gilson on February 19, 2014, "does not mean that [the marijuana] would still be there a week later." Appellant's brief at 10. He further suggests Sergeant Imhoff invalidly based the search warrant upon such stale information.

[T]he threshold question ... in any Fourth Amendment inquiry is whether the conduct of the police amounted to a search." *Commonwealth v. Robbins*, 436 Pa.Super. 177, 647 A.2d 555, 558 (1994) *quoting Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967). Here, Appellant was on parole at the time State Parole Agent Scott Peterson arrived at his home. "[State parole] [a]gents are in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public." 61 Pa.C.S.A. § 6153(a). "Supervision practices shall reflect the balance of enforcement of the conditions of parole and case management techniques to maximize successful parole completion through effective reentry to society." *Id.* As such, "[p]robationers and parolees are subject to general and individual rules of conduct and supervision described at sentencing and/or in the parole agreement." *Fross v. County of Allegheny*, 610 Pa. 421, 20 A.3d 1193, 1197 (2011). *See also* 61 Pa.C.S.A. 6102(1) ("The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison."); *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365, 118 S.Ct. 2014, 2020, 141 L.Ed.2d 344 (1998) ("Parole is a variation on imprisonment of convicted criminals, in which the State accords a limited degree of freedom in return for the parolee's assurance that he will comply with the often strict terms and conditions of his release[;] [i]n most cases, the State

is willing to extend parole only because it is able to condition it upon compliance with certain requirements.") (citations and internal quotations omitted); ("While parole is a provisional release and an amelioration of punishment, it may be said to be, in legal effect, an imprisonment. It is a means of keeping a watchful eye on the convict outside the prison walls."). ***Com. ex rel. Alexander v. Rundle***, 206 Pa.Super. 528, 214 A.2d 304, 306 (1965).

***Commonwealth v. Smith***, 85 A.3d 530, 536 (Pa.Super. 2014)

It is clear that Agent Gilson and his fellow agents were acting within the scope of their supervisory duties when they visited Appellant's residence on February 26, 2014, to ensure his compliance with the conditions of his parole. Again, Appellant expressly consented to such a visit in his written parole agreement, as explained above. Moreover, we have recognized that such a visit and inspection of open areas for possible violations of probation or parole do not constitute a search for purposes of the Fourth Amendment. ***See Id.*** at 536-37. In this regard, the suppression court credited Agent Gilson's unrebutted testimony that the agents and he confined their inspection to making plain view observations in the dining room, where they saw a case of beer, and the living room, where they smelled the aroma of marijuana emanating from a locked drawer in the TV stand.

At that point, they requested assistance from Sergeant Imhoff, as they were concerned about the possible presence of unknown individuals, similar to the prior week, who may have been hiding in one of the back rooms. Sergeant Imhoff completed the sweep initiated by the agents and saw marijuana, methamphetamine, and drug paraphernalia in plain view. The

combined observations of the agents and Sergeant Imhoff supplied the reasonable suspicion necessary to secure a search warrant for the residence. Finally, Sergeant Imhoff confined the probable cause affidavit to these February 26, 2014, observations, the magistrate issued a warrant, and the sergeant executed the warrant on February 27, 2014.

This record belies Appellant's assertion that the visit and inspection of Appellant's residence on February 26, 2014 constituted a search—let alone an unreasonable one—for purposes of the Fourth Amendment. Nor is Appellant correct when he contends that the ensuing search warrant was based on "stale" observations made in previous weeks, as the probable cause affidavit refers only to observations made on February 26th. Accordingly, we discern no merit to the present appeal.

Judgment of sentence is AFFIRMED.

P.J.E. Bender joins the memorandum.

Judge Lazarus concurs in the result.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2016

- 11 -