RENDELL, Circuit Judge,
concurring.
I concur with the majority’s holding that there was reasonable suspicion to support the search in question. On appeal before us, Strickland has abandoned the argument that a warrant should have been obtained, perhaps believing that Griffin sealed his fate in that regard, given the existence of a Pennsylvania law for parolees similar to the one that the Griffin Court upheld as constitutional. Strickland confines his argument to the issue of whether reasonable suspicion was present, and because I agree with the majority’s view that it was, I agree with its disposition of this appeal. I write separately, however, to urge that there are gaps in our Fourth Amendment parole/probation jurisprudence regarding special needs searches that need to be filled in the appropriate case.
I.
The Supreme Court jurisprudence in the area of probationer and parolee searches has involved specific factual settings, none of which fits precisely with the fact pattern here. In Griffin, the Court considered the constitutionality of a search undertaken pursuant to Wisconsin’s regulation which authorized warrantless searches of probationers on the basis of reasonable suspicion. The Court in Griffin upheld the search regime as well as the search undeniably undertaken for the special need for which the regime was created: supervision of the probationer population. We have a similar regulation in Pennsylvania, and there has been no challenge to its constitutionality. But the purpose of the search is subject to question, as is whether the special needs justification is applicable when the search is undertaken eight months after incarceration and the aims of parolee rehabilitation and supervision are far more attenuated.
In United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), the Supreme Court addressed the propriety of an investigatory search of a probationer by a police officer, and concluded that a search without a warrant and based on reasonable suspicion was reasonable under the Fourth Amendment, based on a balancing of the state’s interests and the probationer’s diminished expectation of privacy. That diminished expectation of privacy was due in large part to a condition of probation permitting suspicionless searches. Id. at 119-20, 122 S.Ct. 587. In Strickland’s case, we have no evidence that such a condition was imposed and, in any case, Pennsylvania law requires that pa *780 role searches be based on reasonable suspicion.
Our opinion in Hill relied on the special needs justification, and properly so, because it involved a search conducted the day after the parolee’s arrest and was clearly aimed at fulfilling the needs of the parole system. Again, that fact pattern differs from the eight-month delay we have before us. In the instant case, as the majority notes, we are not presented with a challenge to the parameters of the special needs justification for warrantless searches of parolees’ residences. Under Griffin, the search at issue here presumably should be viewed as constitutional because it was conducted “pursuant to” the authority of the Pennsylvania regulation. But I question whether the Court in Griffin intended that a search of a home of a parolee who is incarcerated and not under active supervision, a search that is conducted eight months after the parolee was apprehended and conducted without any urgency, nonetheless qualifies as a special needs search,[8] even if carried out under the aegis of a constitutional regulation.[9]
In Griffin, there was no question that the search was aimed at fulfilling Wisconsin’s special needs; the defendant was out on probation when the probation office received a tip from police that there might be guns in Griffin’s apartment. Probation officers came to Griffin’s home accompanied by three plainclothes police officers, found him there, and informed him that they were going to search the home. The search, “carried out entirely by the probation officers under the authority of Wisconsin’s probation regulation,” Griffin, 483 U.S. at 871, 107 S.Ct. 3164, uncovered a handgun. In determining whether a warrant was required, the Griffin Court noted that time concerns were a key reason why warrants were impracticable for searches of probationers. “A warrant requirement would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires. Moreover, the delay inherent in obtaining a warrant would make it more difficult for probation officials to respond quickly to evidence of misconduct, and would reduce the deterrent effect that the possibility of expeditious searches would otherwise create.” Id. at 876, 107 S.Ct. 3164 (citation omitted).
For the same reasons, the Griffin Court found that probationer searches need not be based on probable cause. “We think *781 that the probation regime would also be unduly disrupted by a requirement of probable cause.” Id. at 878, 107 S.Ct. 3164. “In some cases — especially those involving drugs or illegal weapons — the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society.” Id. at 879, 107 S.Ct. 3164.
In short, Griffin involved a special needs search necessarily implicating concerns beyond normal law enforcement objectives, and the Griffin Court emphasized two interests behind the need for close supervision of probationers: rehabilitation of the probationer and protection of the community. Additionally, the Court found that the warrant and probable cause requirements could cause delays in monitoring probationers, and interfere with the type of speed needed for meaningful supervision of a probationer.
The line between normal law enforcement searches and special needs searches becomes very fine when parole and probation are involved,[10] and thus additional care is required in how courts approach such searches. Supervision of parolees in the community is a special need, but given the slippery slope between special needs and typical law enforcement searches — of homes, no less — in the context of probation and parole, extra caution is needed when a search is undertaken eight months after the arrest, and while the parolee is incarcerated.
The rationales supporting a warrantless search in Griffin are wholly inapplicable here, where Strickland had been incarcerated for eight months at the time of the search. Strickland was not at his home when the search took place, he was in a county prison cell. Under Griffin, probationary status and the attendant state interests alter the Fourth Amendment warrant requirement, but the reason for doing so is that the government has a special need in supervising the individual while he is out on probation. There was no suggestion in Strickland’s case, as there was in Griffin, that evidence might have been destroyed but for the parole officer’s ability to conduct a search unencumbered by the warrant requirement. There was no suggestion that the rationale for the search in Strickland’s case was to supervise Strickland or, as Miller’s report stated, to “ensure compliance with his parole,” App. 38; Strickland most certainly had not complied, and Miller knew that. Nor could such rationales have justified the search because Strickland was already incarcerated. Indeed, with his revocation still to be held, one might posit that the *782 purpose of the search was simply to obtain evidence.[11]
The purposes underlying this search appear to differ from those in Griffin. At best, the premise for the April search was to determine to what extent Strickland had violated his parole. But this government interest is different from the one approved by the Court in Griffin, when the search occurred while Griffin was in the home itself. Assessing the extent of a parole violation after the parolee is already in custody is a legitimate but less compelling interest than determining whether the parolee is complying with the conditions of his parole in the first place. Most importantly, when the search occurs eight months after the initial arrest, it cannot be considered a special need beyond normal law enforcement objectives. Indeed, it is essentially a simple search for evidence to use in enhancing the parolee’s punishment.
Bottom line, I am constrained to read Griffin as authorizing a warrantless search such as this where a valid regulation is in place. However, if such a reading of Griffin is correct, I question the wisdom of its holding. Accordingly, in the appropriate case, I would re-examine whether Griffin and, concomitantly, the special needs justification, may be read so broadly as to legitimize all warrantless searches of a parolee conducted by a parole officer prior to a parole revocation hearing where specifically authorized by statute.

. The baseline requirement for searches of a home is a warrant. The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” U.S. Const, amend. IV. The Fourth Amendment "ordinarily prohibitfs] the warrantless entry of a person’s house as unreasonable per se," Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 1520, 164 L.Ed.2d 208 (2006), and the home is where Fourth Amendment interests are at their apex. See Payton v. New York, 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (“The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home____”).

. Griffin seems to have left open only the question as to a search not pursuant to such a regulation. See Griffin, 483 U.S. at 880, 107 S.Ct. 3164 (“The search of Griffin's residence was ‘reasonable’ within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers. This conclusion makes it unnecessary to consider whether ... any search of a probationer's home by a probation officer is lawful when there are ‘reasonable grounds’ to believe contraband is present.”).

. Indeed, the parole system relies on its close relationship with the criminal justice system for its success; it encourages rehabilitation with revocation of parole and criminal punishment as unmistakable consequences of noncompliance. "The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules.” Morrissey v. Brewer, 408 U.S. 471, 478-79, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Accordingly, the line between ordinary law enforcement interests and the state interests beyond them is blurred in the context of probation and parole; certain searches may indeed be aimed at rehabilitation, but others may not. See Steven J. Schulhofer, On the Fourth Amendment Rights of the Law-Abiding Public, 1989 Sup.Ct. Rev. 87, 118 (describing as a "meaningless inquiry” the question of "whether probation supervision constitutes mere ‘regulation’ or ‘ordinary law enforcement’ ”); Note, Antoine McNamara, The "Special Needs” of Prison, Probation, and Parole, 82 N.Y.U.L. Rev. 209, 245 n. 235 (2007) ("[T]he doctrinal distinction between law enforcement and non-law enforcement needs is somewhat tenuous. This is especially true when applied to government supervision of individuals on parole or probation.”) (citation omitted).

. Ferguson v. City of Charleston, 532 U.S. 67, 83 n. 20, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001) ("In none of our previous special needs cases have we upheld the collection of evidence for criminal law enforcement purposes.”).