[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11594
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cr-00025-RWS-JCF-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK FITZGERALD HINTON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 18, 2017)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Frederick Fitzgerald Hinton appeals his 149-month total sentence, imposed after pleading guilty to one count of committing Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a), 2, and one count of brandishing firearms during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 2.  On appeal, Hinton argues that the district court erred in denying his motion to suppress evidence that resulted from an initial DNA match between a sample taken from the crime scene and a DNA profile that the Georgia Bureau of Investigation ("GBI") kept in the Combined DNA Index System ("CODIS") database.  This DNA profile was created and uploaded to the CODIS database from a sample taken by the Georgia Department of Corrections ("DOC") after Hinton pled guilty, was sentenced under Georgia's First Offender Act ("FOA"), and sent to prison.  However, the GBI kept his profile after he left prison and the match to the crime scene evidence while Hinton was on probation.  He argues that the retention and use of his DNA profile violated state law and the Fourth Amendment because, under state law, he was never "convicted" of his FOA offense.

In reviewing the district court's denial of a motion to suppress, we review the findings of fact for clear error, and the application of the law to the facts *de novo*.  *United States v. Epps*, 613 F.3d 1093, 1097 (11th Cir. 2010).  A district court's choice between two permissible views of the evidence cannot be clear error.  *United States v. Ndiaye*, 434 F.3d 1270, 1305 (11th Cir. 2006).  We

2

construe all facts in the light most favorable to the prevailing party below. *United States v. Lewis*, 674 F.3d 1298, 1302-03 (11th Cir. 2012). We may affirm the denial of a motion to suppress on any ground supported by the record. *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010).

The district court is not required to suppress evidence on the ground that a state rule was violated. *United States v. Noriega*, 676 F.3d 1252, 1263 n.4 (11th Cir. 2012). Federal law, not state law, governs the admissibility of evidence in federal court, and "complaints that the evidence was obtained in violation of state law are of no effect." *Id*. (quotation omitted).

The Fourth Amendment provides "the right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., Amend IV. In *United States v. Knights*, the Supreme Court held that a warrantless search of a probationer's apartment based on reasonable suspicion was not a Fourth Amendment violation because it was reasonable under the totality of the circumstances. *United States v. Knights*, 534 U.S. 112, 118 (2001). Knights's status as a probationer subject to a search condition informed both sides of the Court's balancing test. *Id*. at 119. The Court noted that probation, like incarceration, was a form of criminal sanction imposed by a court upon an offender after a verdict, finding, or guilty plea, and it inherently involved reduced liberty. *Id*. Additionally, the Court held that Knights, as a probationer,

3

was more likely than the ordinary citizen to violate the law, invoking the government's interest in apprehending violators of the law. *Id*. at 120–121.

In *Padgett v. Donald*, we held that the Georgia statute that required convicted, incarcerated felons to provide a sample of their DNA to the DOC for analysis and storage in a data bank maintained by the GBI did not violate the Fourth Amendment. *Padgett v. Donald*, 401 F.3d 1273, 1280 (11th Cir. 2005). In assessing whether the statute was reasonable under the totality of the circumstances, we held that "Georgia's legitimate interest in creating a permanent identification record of convicted felons for law enforcement purposes outweighs the minor intrusion involved in taking prisoners' saliva samples and storing their DNA profiles, given prisoners' reduced expectation of privacy in their identities." *Id*.

Later, in *Maryland v. King*, the Supreme Court held that Maryland's DNA statute was reasonable under the Fourth Amendment. *Maryland v. King*, 133 S. Ct. 1958, 1980 (2013). This statute permitted law enforcement officials to collect and analyze DNA samples from individuals arrested and arraigned for certain felonies, but required destruction of the samples if the charges were found to be unsupported by probable cause, the defendant was acquitted, or the defendant's conviction was vacated or reversed. *Id*. The Court noted that the law was strictly for purposes of identification. *Id*. at 1967. To determine reasonableness, the Court balanced the

4

defendant's legitimate expectations of privacy, the government's significant interest in the identification of arrestees, and DNA identification's unmatched potential to serve that interest. *Id*. at 1970, 1977-78, 1980. Ultimately, the Court found that the taking of a DNA swab constituted a minor intrusion that did not offend the defendant's privacy expectations. *Id*. Consequently, the Court found that collecting and analyzing DNA, like fingerprinting and photographing, was a legitimate police booking procedure for serious offenses that was reasonable under the Fourth Amendment. *Id*. at 1980.

> Pursuant to the Georgia DNA Act:
>
> Any person convicted of a felony offense who is held in a detention facility or placed on probation shall at the time of entering the detention facility or being placed on probation have a sample of his or her blood, an oral swab, or a sample obtained from a noninvasive procedure taken for DNA (deoxyribonucleic acid) analysis to determine identification characteristics specific to the person . . . It shall be the responsibility of the detention facility detaining or entity supervising a convicted felon to collect the samples required by this Code section and forward the sample to the division unless such sample has already been collected by the department or another agency or entity.

O.C.G.A § 35-3-165(b).

A DNA sample obtained in good faith shall be deemed as obtained in accordance with the requirements of the Act. O.C.G.A § 35-3-160(b). Its use in accordance is authorized until a court order directing expungement is obtained and submitted to the GBI. *Id*.

5

Georgia's First Offender Act states that "[u]pon a verdict or plea of guilty or a plea of nolo contendere, and before an adjudication of guilt," in the case of a defendant who has not been previously convicted of a felony, the court may, "without entering a judgment of guilt . . . [d]efer further proceedings and either place the defendant on probation or sentence the defendant to confinement." O.C.G.A. § 42-8-60(a). When the court imposes a sentence pursuant to the FOA, it "[s]hall state in its sentencing order the prospective effective date of the defendant being exonerated of guilt and discharged as a matter of law, assuming the defendant successfully complies with its sentencing order, provided that such date may not have taken into account the awarding of credit for time served in custody." O.C.G.A. § 42-8-60(c). The court may enter an adjudication of guilt and proceed to sentence the defendant when, among other things, the defendant violates the terms of his first offender probation. O.C.G.A. § 42-8-60(d). A defendant sentenced under the FOA shall be exonerated of guilt and shall stand discharged as a matter of law as soon as the defendant: (1) completes the terms of his probation; (2) is released by the court prior to termination of his probation; or (3) is released from confinement and parole, provided that the defendant is not serving a split sentence. O.C.G.A. § 42-8-60(e).

Under the 2015 version of O.C.G.A. § 42-8-65(c), any person sentenced to a term of confinement under the FOA shall be deemed to have been convicted of the

6

offense during their term of confinement.  O.C.G.A. § 42-8-65(c) (2015 version).

Currently, any defendant sentenced for an offense under the FOA shall not be

deemed to have been convicted during such sentence.  O.C.G.A. § 42-8-65(c).

Under the exclusionary rule, evidence "derived from" police misconduct is

subject to exclusion as "fruit of the poisonous tree."  *United States v. Terzado-*

*Madruga*, 897 F.2d 1099, 1112-13 (11th Cir. 1990).  In considering whether

evidence is fruit of the poisonous tree that must be suppressed, we ask "whether,

granting establishment of the primary illegality, the evidence to which instant

objection is made has been come at by exploitation of that illegality or instead by

means sufficiently distinguishable to be purged of the primary taint."  *Wong Sun v.*

*United States*, 371 U.S. 471, 488 (1963) (quotations omitted).

One exception to the exclusionary rule is the "good faith" exception set forth

by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 922 (1984).  The

*Leon* good faith exception extends to police officers acting in reasonable reliance

upon a search warrant that ultimately is found unsupported by probable cause.

*United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002).  It applies in all but

four limited sets of circumstances: (1) where the magistrate or judge in issuing a

warrant was misled by information in an affidavit that the affiant knew was false or

would have known was false except for his reckless disregard of the truth; (2)

where the issuing magistrate wholly abandoned his judicial role; (3) where the

7

affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. *Id.*

The district court did not err in denying Hinton's motion to suppress. As an initial matter, Hinton conceded that the initial collection of his DNA while serving his FOA sentence was permissible. Instead, Hinton contends that the creation of his DNA profile, its uploading and retention in CODIS after his incarceration ended, and the running of a comparison to other profiles after his release from incarceration violated his Fourth Amendment rights. We need not address whether these actions constituted searches. Even assuming they were searches, they do not violate the Fourth Amendment. Further, his argument that they violated Georgia state law is unavailing, because federal law, not state law, governs the admissibility of evidence in his case. *Noriega*, 676 F.3d at 1263 n.4.

Hinton's Fourth Amendment rights were not violated because the potential searches were reasonable when weighing his privacy interests against the government's interests served by the searches. Hinton's status as a probationer (or, earlier, his status as an incarcerated offender) informs both sides of the balancing test. *See Knights*, 534 U.S. at 119. As a probationer at the time the GBI made its

8

initial CODIS match, Hinton had a reduced expectation of privacy. *Id.* The fact that Hinton was not technically convicted under state law is irrelevant, as the reduced-liberty-for-probationers rationale in *Knights* did not turn on the "conviction" status of probationers, but the fact that they were being sanctioned for a criminal violation following a plea or finding of guilt. *Id.* Here, Hinton was sanctioned for his FOA offense after pleading guilty. In contrast, the government had a strong interest in creating a permanent identification record for convicted felons for law enforcement purposes. *See Padgett*, 401 F.3d at 1280. Moreover, as a probationer, the government holds a higher interest in retaining Hinton's DNA profile than that of an ordinary citizen in case of the commission of a future offense. *See Knights*, 534 U.S. at 120-121. Consequently, when balancing these interests, under the totality of the circumstances, uploading, retaining and running a comparison of Hinton's DNA profile in CODIS was reasonable and did not violate the Fourth Amendment. *Id.* at 118-19.

Moreover, as none of the actions taken by law enforcement constituted a violation of Hinton's Fourth Amendment rights, the search warrants obtained to take additional buccal swabs and seize and search his phone were not tainted, so as to require suppressing the evidence they yielded. *See Wong Sun*, 371 U.S. at 488. Accordingly, because the district court did not err in denying Hinton's motion to suppress, we affirm.

**AFFIRMED.**