[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-11477

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAQUEZ L. GILBERT,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:20-cr-00026-HL-TQL-1

————————————————

Before LAGOA, BRASHER, and DUBINA, Circuit Judges.

PER CURIAM:

Jaquez L. Gilbert appeals his conviction for possession of a firearm and ammunition by a convicted felon, challenging the district court's denial of his motion to suppress based on an evidentiary search of the home of his girlfriend, Rukeya Loveday. Gilbert argues, and the government does not dispute, that he had Fourth Amendment standing to challenge the search because he was a regular overnight guest at Loveday's house. Gilbert contends that his probation search waiver did not authorize the search because the probation condition did not permit warrantless searches at third party residences. He asserts that, contrary to the government's arguments, neither the attenuation doctrine nor the inevitable discovery doctrine applies to allow the admission of the evidence. After reading the parties' briefs and reviewing the record, we conclude that the district court did not err in denying Gilbert's motion to suppress, and we affirm Gilbert's conviction.

**I.**

Regarding a motion to suppress, we review the district court's factual findings for clear error and legal conclusions *de novo*. *United States v. Barber*, 777 F.3d 1303, 1304 (11th Cir. 2015). We may affirm the denial of a motion to suppress on any ground that the record supports. *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010). We construe the facts "in the light most favorable to the prevailing party below," affording substantial deference to

the district court's explicit and implicit credibility determinations. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012) (quotation marks omitted).

## II.

Standing under the Fourth Amendment is non-jurisdictional, and "the government waives any standing objection that it fails to raise." *United States v. Ross*, 963 F.3d 1056, 1065-66 (11th Cir. 2020) (*en banc*). A legal claim or argument not briefed before our court is deemed forfeited, and we will consider its merits only in extraordinary circumstances. *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (*en banc*), *cert. denied*, 143 S. Ct. 95 (2022).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. The reasonableness of a search is "[t]he touchstone of the Fourth Amendment," *United States v. Knights*, 534 U.S. 112, 118, 122 S. Ct. 587, 591 (2001), and without a warrant issued upon probable cause, a search is unreasonable unless it falls into a specifically established exception, *Katz v. United States*, 389 U.S. 347, 356-57, 88 S. Ct. 507, 514 (1967).

However, there is no rational basis to suppress evidence obtained by unconstitutional methods "if the government can prove that the evidence would have been obtained inevitably." *Nix v. Williams*, 467 U.S. 431, 447, 104 S. Ct. 2501, 2511 (1984). Thus, under the inevitable discovery doctrine, the government may introduce evidence that it obtained through an illegal search if it shows:

(1) "by a preponderance of the evidence that if there had been no constitutional violation, the evidence in question would have been discovered by lawful means," and (2) "that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *United States v. Watkins*, 13 F.4th 1202, 1211 (11th Cir. 2021) (*en banc*) (quotation marks omitted). When the "active pursuit" in question does not involve a search warrant, the government need not "have already planned the particular legal search that would obtain the evidence." *Id.* at 1215 (quotation marks omitted, alteration adopted). Rather, the government only must show "that the police would have discovered the evidence by virtue of *ordinary investigations of evidence or leads already in their possession*." *Id.* (quotation marks omitted, emphasis added).

Under the attenuation doctrine, courts are required to conduct two separate inquiries where a consent to search follows prior illegal activity by the police: (1) whether the consent was voluntary; and (2) whether the consent, even if voluntary, requires exclusion of the evidence found during the search because it was the product of an illegal entry, *i.e.*, that it was the "fruit of the poisonous tree." *United States v. Delancy*, 502 F.3d 1297, 1308 (11th Cir. 2007) (quotation marks omitted). The government must prove that the illegal action did not cause the consent, and the district court must determine whether the evidence in question was obtained by exploitation of the initial unlawful action or by "means sufficiently distinguishable to be purged of the primary taint." *Id.*

at 1309 (quotation marks omitted). "This is a fact-specific question, and no single fact is dispositive." *Id.*

Three non-exhaustive factors guide the attenuation analysis, which is a pragmatic evaluation of the extent to which the illegal police conduct caused the consent to be given: (1) the temporal proximity between the unlawful police conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the unlawful police conduct. *Id.* at 1309-10. As to temporal proximity, if only a short time has elapsed between the illegal act and a subject's consent, the factor weighs in favor of exclusion of the evidence. *Id.* at 1310. An intervening circumstance is any event that interrupts the causal connection between the illegal act and the possibly tainted consent. *Id.* at 1311. As to purpose and flagrancy of the police conduct, "when the police act with the express purpose of exploiting an illegal action, the causation is so obvious that no real attenuation analysis is even necessary." *Id.* at 1312.

Other factors that the court may consider are whether: (1) the seizure brought about police observation of the particular object for which the police sought consent to search, (2) the consent was volunteered rather than requested by the officers, (3) the detainee was made fully aware that she could decline to consent and thus prevent an immediate search of the home, (4) there has been a significant intervening event, and (5) the police purpose underlying the illegality was to obtain the consent. *Id.* at 1309-10.

We find *Delancy* instructive to the present case. In that case, officers came to LaSandra Godfrey's home to question her boy-friend, Ronald Delancy, about several crimes. *Id.* at 1301. After placing something in the sofa, Delancy voluntarily exited the home, and officers arrested him outside. *Id.* Officers then con-ducted a protective sweep. *Id.* Officers asked Godfrey if they could search her home, providing a written consent form, which she signed, that informed her of her Fourth Amendment rights. *Id.* at 1301-02. Officers testified that the tone of the conversation was conversational rather than threatening and that they did not point a gun or threaten Godfrey for her consent. *Id.* at 1303. Godfrey agreed that the officers were polite but stated that they threatened her about her kids. *Id.* Before Godfrey consented to the search, officers found contraband in the sofa. *Id.*

We noted that, while the temporal proximity was close, tim-ing was not the most important factor because the interaction was conversational in tone and the officers did not threaten, handcuff, or detain Godfrey to force consent. *Id.* at 1310-11. We emphasized that intervening circumstances required an event that severed the causal connection between the illegal activity and the consent, such as when the officers made Godfrey aware of her rights under the Fourth Amendment. *Id.* at 1312. As to purpose and flagrancy, we noted that the officers intended to comply with the law, did not act flagrantly in searching large areas of the house, and did not use the evidence found to obtain consent. *Id.* at 1312-13. We noted as sig-nificant that Godfrey was not the defendant in the case. *Id.* at 1314. We ultimately concluded that the attenuation doctrine applied

because Godfrey's consent was not tainted by the illegal entry. *Id.* at 1316. As to the contraband found prior to Godfrey's consent, we concluded that the evidence was admissible under the inevitable discovery doctrine because Godfrey's consent was voluntary and there was a reasonable probability that the officers would have found the drugs in the sofa after Godfrey's consent because they had observed Delancy place something in the sofa. *Id.* at 1315.

## III.

As an initial matter, the record discloses that the government has forfeited any challenge to Gilbert's Fourth Amendment standing by failing to raise the issue on appeal, so we need not address that issue.

The record demonstrates that the district court did not err in finding that exclusion of the evidence was unwarranted under the attenuation doctrine and the inevitable discovery doctrine. Thus, we decline to reach the issue of whether the Fourth Amendment permits officers to conduct a probationary search in a third party's residence where a probationer is staying as an overnight guest.

First, as to the attenuation doctrine, we conclude that the illegal conduct did not cause Loveday's consent because the factors weigh against exclusion. While the temporal proximity was close, timing was not the most important factor because nothing in the record suggests that the officers threatened, handcuffed, or detained Loveday to secure her consent. Because Investigator Williams testified that he planned to obtain Loveday's consent to

conduct an evidentiary search before entering the house, the purpose of the search was not based on the findings of the initial search. The record confirms that the officers did not act flagrantly because, during the initial search, they only searched the bedroom area rather than the entire house. Further, nothing in the record suggests that the officers made Loveday aware of the contraband to obtain consent. Notably, like in *Delancy*, Loveday is not the defendant. While the record does not show any intervening circumstances, the other factors outweigh the lack of intervening circumstances.

Further, under the inevitable discovery doctrine, we conclude that the officers would have discovered the evidence by lawful means, as they searched the bedroom after obtaining consent from Loveday. The officers were actively pursuing the lawful means prior to discovering the evidence because Investigator Williams testified that he planned to ask Loveday for her consent to conduct an evidentiary search when she arrived. Accordingly, based on the aforementioned reasons, we conclude that the district court did not err in denying Gilbert's motion to suppress the firearms and ammunition found during the search of Loveday's home, and, therefore, we affirm Gilbert's conviction.

**AFFIRMED.**