Filed 1/25/24  P. v. Saldana-Lemus CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ESTEFANI YATSIRI SALDANA-LEMUS,<br><br>    Defendant and Appellant. | F086066<br><br>(Super. Ct. No. F21904714)<br><br>**OPINION** |

-ooOoo-

**THE COURT**<sup>*</sup>

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt and Jon N. Kapetan, Judges.

J. M. Malik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Hannah Janigian Chavez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

<sup>*</sup>        Before Poochigian, Acting P. J., Peña, J. and Meehan, J.

Defendant Estefani Yatsiri Saldana-Lemus brings this appeal to challenge the denial of her motion to suppress the results of a blood draw taken without her consent. The blood draw, which was taken at a hospital following a car accident in which she was the driver, showed defendant tested positive for methamphetamines and had a blood alcohol level (BAC) of 0.15 percent. We affirm the denial of defendant's motion to suppress.

## PROCEDURAL SUMMARY[1]

On June 10, 2021, a felony complaint was filed alleging defendant committed the crimes of causing injury while driving while under the influence of alcohol and drugs (Veh. Code,[2] § 23153, subd. (g), a felony; count 1), driving with a BAC over .08 percent, causing injury (§ 23153, subd. (b), a felony; count 2), driving while under the influence of an alcoholic beverage (§ 23153, subd. (a), a felony; count 3), driving while under the influence of a drug (§ 23153, subd. (f), a felony; count 4), and possessing a controlled substance (Health & Saf. Code, § 11377, subd. (a), a misdemeanor; count 5). Each count also contained additional allegations of potential enhancements that might apply if defendant was convicted of the specific crimes charged.

On April 26, 2022, a motion to suppress was filed on defendant's behalf challenging a blood draw that was taken without her consent. This motion was heard on May 17, 2022, as part of the preliminary hearing, and was denied on that same date. Defendant challenged the magistrate's denial of the motion to suppress through a Penal Code section 995 motion in the trial court. This motion was denied on August 5, 2022.

---

[1] For this procedural summary and the subsequent factual summary, the presentation is limited to the information needed to consider the denial of defendant's motion to suppress evidence.

[2] All further statutory references are to the Vehicle Code except where otherwise indicated.

On January 12, 2023, defendant entered a plea of nolo contendere to the allegations in count 1 of causing injury while driving under the influence of both alcohol and drugs. Defendant also admitted a prior conviction and a sentencing enhancement alleged with count 1, that she inflicted great bodily injury on another person while committing a felony (Pen. Code, § 12022.7, subd. (a)). The allegations contained in counts 2 through 5 were then dismissed.

On March 13, 2023, defendant was sentenced to a total term of five years. A notice of appeal was filed on April 6, 2023, stating the appeal was based on the denial of a motion to suppress brought under Penal Code section 1538.5.

## FACTUAL SUMMARY[3]

Sometime before 5:00 a.m. on March 30, 2019, defendant was the driver of a car involved in a single car accident. A police officer responding to a report about the accident testified it was his belief the car was traveling at an unsafe speed when it veered off the roadway and collided with a pole.

Officer David Fenstermaker, who also responded to the scene, reported that when he arrived at approximately 4:51 a.m. all four occupants of the car involved in the collision were already being loaded into ambulances. Fenstermaker then followed these individuals to a hospital to continue his investigation of the collision. Fenstermaker testified he made several attempts to interview defendant,[4] but was unsuccessful as a variety of medical personnel were in the process of treating her injuries. Fenstermaker's efforts are documented in two separate body camera videos from that day. The first video shows defendant surrounded by anywhere from six to eight medical personnel

---

[3] This summary of facts is taken from the transcript of the May 17, 2022 hearing held to address defendant's suppression motion and the preliminary hearing on the charges raised in the felony complaint.

[4] Fenstermaker later identified defendant as the driver of the car through fingerprint evidence.

3

either asking her questions or tending to her medical needs. Fenstermaker noted that while she was being treated, defendant did not appear to be responding well to questions posed by the medical personnel.

Because he was unable to talk to defendant initially, Fenstermaker decided to continue his investigation by talking to the other occupants of the car involved in the accident. One witness told Fenstermaker that defendant was the driver of the car, and that defendant and a passenger in the front seat were drinking from a liquor bottle while driving. This witness also stated defendant was driving at excessive speeds and almost hit a diesel truck while they were on a freeway. Fenstermaker confirmed these facts with the two other passengers involved in the accident, including the person who was sitting in the front passenger seat who admitted drinking alcohol with defendant while she was driving.

Following these interviews, Fenstermaker again attempted to talk to defendant. This was approximately one hour after his initial attempt. However, now defendant did not respond at all and appeared to be unconscious. In fact, the second body camera video shows when Fenstermaker returned to question defendant she was unconscious and unresponsive.

Fenstermaker soon learned defendant had been sedated because she was "combative" with staff. Because he already suspected defendant had been under the influence when she was driving, Fenstermaker became concerned a good blood draw was now in jeopardy, especially after he learned defendant might be going into surgery for her injuries. Fenstermaker was also concerned there was not enough time to obtain a warrant for the blood draw due to the fact normal court hours had not yet started and the immediate availability of a judge was not guaranteed.

At approximately 6:50 a.m., two hours after the accident, Officer Frank Borrego arrived at the hospital to relieve the night shift officer. Borrego noted the chaotic scene at

4

the hospital and that defendant was still being treated. After he learned defendant would soon be going into surgery, Borrego conveyed this information to Fenstermaker. Fenstermaker asked Borrego to have hospital staff perform a blood draw as he was concerned any surgery would impact the quality of the blood draw. Borrego testified he observed a hospital phlebotomist complete a blood draw on defendant at approximately 8:17 a.m. At some point after the blood draw was completed, the medical staff at the hospital decided not to take defendant into surgery right away. The blood draw showed defendant tested positive for methamphetamines and had a BAC of 0.15 percent.[5]

## DISCUSSION

Defendant believes the warrantless blood draw conducted at the hospital on March 30, 2019, violated her Fourth Amendment rights and should have resulted in a successful motion to suppress in the trial court.

## I. The Standard of Review

When asked, we are required to conduct an independent review of the constitutionality of a search. (*People v. Nault* (2021) 72 Cal.App.5th 1144, 1148 (*Nault*).) Blood draws and breath tests are considered searches under the Fourth Amendment of the United States Constitution. (*Birchfield v. North Dakota* (2016) 579 U.S. 438, 455.) Because federal law governs this analysis, we are not allowed "a state law departure." (*Nault*, at p. 1148; see also *People v. Souza* (1994) 9 Cal.4th 224, 232–233.)

"Where, as here, a motion to suppress evidence is submitted to the superior court on the preliminary hearing transcript (see [Pen. Code,] § 1538.5, subd. (i)), ' "the appellate court disregards the findings of the superior court and reviews the determination of the magistrate who ruled on the motion to suppress, drawing all presumptions in favor

---

[5] Again, this blood draw was taken approximately four hours after the accident.

of the factual determinations of the magistrate, upholding the magistrate's express or implied findings if they are supported by substantial evidence, and measuring the facts as found by the trier against the constitutional standard of reasonableness." ' " (*People v. Cruz* (2019) 34 Cal.App.5th 764, 769.)  However, when reviewing the trial court's decision on whether a search or seizure was reasonable under the Fourth Amendment, "we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) We will affirm the denial of a motion to suppress if the lower court's ruling is correct under any legal theory.  (*Cruz*, at p. 769.)

"The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " (*United States v. Knights* (2001) 534 U.S. 112, 118–119.)  Reasonableness is measured objectively by examining the totality of the circumstances.  (*People v. Schmitz* (2012) 55 Cal.4th 909, 921.)

Without " 'a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.' " (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1213.)  One such exception to the warrant requirement involves "exigent circumstances," "which arise when an emergency makes law enforcement needs so compelling that a warrantless search is objectively reasonable." (*Nault*, *supra*, 72 Cal.App.5th at p. 1148.) On this point, the *Nault* court relied on the recent United States Supreme Court opinion in *Mitchell v. Wisconsin* (2019) 588 U.S. ___ [139 S.Ct. 2525] to conclude, "Circumstances are exigent when blood-alcohol evidence is dissipating, as it always is, and a pressing health, safety, or law enforcement need takes priority over a warrant application." (*Nault*, at p. 1148.)  While the *Mitchell* court cautioned "the exigent-circumstances exception would not permit a warrantless blood draw in every drunk-driving case," it

acknowledged delays in BAC testing could put the accuracy of a delayed test in question. (*Mitchell*, at p. __ [139 S.Ct. at p. 2536] (italics omitted).) However, "the Fourth Amendment 'almost always' permits a warrantless blood test when police officers do not have a reasonable opportunity for a breath test before hospitalization." (*Nault*, at p. 1148.)

## II. The Facts Here Support a Finding of "Exigent Circumstances"

Again, we review the findings of the magistrate using our own independent judgment to first find substantial evidence supporting his findings before addressing the question of reasonableness. (See *People v. Glaser*, *supra*, 11 Cal.4th at p. 362.) Before issuing his ruling, the magistrate noted his consideration of the current status of the law, including recent changes made to the exigent circumstances standard by the *Mitchell* court. The magistrate then made the following statement:

> "Now, every case, almost every case can be factually distinguished from whatever is before us, but here it was determined at the scene of the accident that all of the parties in the car needed to be transported forthwith to the hospital. No officers were given an opportunity to take any investigative steps with regard to any of the passengers in the vehicle, including the driver, the defendant here. So, obviously, there was no circumstance that allowed for a breath test prior to hospitalization. [¶] … [¶]

> "[Fenstermaker] stated that he did observe objective symptoms of intoxication, not from his immediate or personal investigation, but by observing the defendant's responses when he first encountered her being treated by medical staff, but then she was immediately taken into a trauma room where she was being treated…. Thereafter, she was being treated and he had no accessibility to her to either request a consensual test or to take on further examination of her physical condition to advance his either intent to arrest or intent to seek a warrant on the basis of her unavailability. He did not at that point necessarily have all of the information he needed to detain or arrest.

> "Now, he obtained that further information in the intervening hour plus before being able to come back to the defendant, at which time she

was, for all intents and purposes, [unconscious]. She was not responsive to his direct communication and she was thereafter immediately taken away for what he presumed was going to be immediate surgery for a critical condition. So I don't believe he ever had the opportunity throughout that entire process to either seek a consensual test or to form the basis to request a warrant from a court. [¶] … [¶]

"I do find that there was no sufficient opportunity for [Fenstermaker] to obtain a consent for a consensual test and that the circumstances of medical treatment and/or sedation against the will of the defendant prevented him from obtaining further information that would have been appropriate to include in an affidavit for a blood draw warrant. So exigent circumstances did exist and the warrantless blood draw was justified."

Substantial evidence supports the magistrate's finding the warrantless blood draw was justified. First, the circumstances both at the accident scene and at the hospital did not allow for a breath test to be administered. This is supported by the testimony of Fenstermaker and the other officer responding to the scene of the accident. Fenstermaker's body camera video also provided evidence of the conditions at the hospital preventing either a breath test or consent from defendant for the blood draw. Defendant was not responding coherently to medical personnel early on, then was mostly unconscious once she was sedated. Finally, substantial evidence supports the conclusion made by Fenstermaker that a warrantless blood draw was necessary given the information about defendant being sedated and the possibility she might be going into surgery. As a result, the passage of time was not the only reason in this case to pursue a blood draw before obtaining a warrant.

When observing the totality of the circumstances, it was also reasonable for Fenstermaker to conclude a blood draw was necessary before a warrant could be obtained. Based on the information he accumulated from the other three occupants in the car, Fenstermaker concluded defendant was the driver of the car and was drinking while driving. When he learned defendant had already been sedated and might be going into surgery, it also was reasonable for Fenstermaker to conclude that without a breath test, an

8

immediate blood draw would be necessary. At this point, regular court hours had not yet started, and Fenstermaker could not rely on a quick turnaround for any application requesting a warrant.

While defendant's injuries in this case may not have been as dire as those of the defendant in the *Nault* case, the circumstances surrounding defendant's treatment by medical personnel at the accident scene and at the hospital "left no time for a breath test." (See *Nault*, *supra*, 72 Cal.App.5th at p. 1149.) The *Mitchell* case also confirmed the Fourth Amendment "almost always" permits a warrantless blood test when there is no reasonable opportunity for a breath test before hospitalization. (*Mitchell v. Wisconsin*, *supra*, 588 U.S. at p. ___ [139 S.Ct. at p. 2539].) It was entirely reasonable, therefore, for Fenstermaker to conclude exigent circumstances required him to proceed with obtaining a blood draw of defendant without a warrant.

Again, substantial evidence supports the findings made by the magistrate. Moreover, based on the totality of the circumstances, it was entirely reasonable to conclude the intrusion on defendant's privacy rights was necessary to promote or protect the legitimate governmental interest at stake in this case. (See *United States v. Knights*, *supra*, 534 U.S. at pp. 118–119.) The trial court's denial of the motion to suppress, on the grounds that exigent circumstances permitted Fenstermaker to pursue the warrantless blood draw, is supported by the record.

### DISPOSITION

The judgment is affirmed.